BRYAN CAFORIO (261265)
bcaforio@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
ERIK L. WILSON (339111)
ewilson@susmangodfrey.com
JULIAN SCHNEIDER (347246)
jschneider@susmangodfrey.com
SARAH ALMOND PIKE (337690)
spike@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs John Brown, Eve Fields, Trena Ostlund and Zachary Parker*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN BROWN, TRENA OSTLUND, CLEVELAND GRANDERSON, MATTHEW BLATT, ZACHARY PARKER, KARIM LAURY, and EVE FIELDS on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>VGW HOLDINGS US INC., VGW US, INC., VGW LUCKYLAND INC., LAURENCE ESCALANTE, VGW HOLDINGS LIMITED, VGW MALTA HOLDING LIMITED, VGW MALTA LIMITED, VGW GAMES LIMITED, VGW GP LIMITED, JUMIO CORPORATION, YODLEE, INC., TRUSTLY, INC., and BRIAN CHRISTOPHER MISFUD;<br><br>Defendants. | Case No. 3:25-cv-07071-AMO<br><br>CLASS ACTION<br><br>Hon. Araceli Martínez-Olguín<br>Courtroom 10, 19th Floor<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (ECF No. 39)**<br><br>Date: May 7, 2026<br>Time: 2:00 p.m.<br>Crtrm: 10<br><br>Complaint Filed August 20, 2025<br><br>Jury Trial Demanded |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED .......... 3

III. STATEMENT OF FACTS .......... 3

IV. LEGAL STANDARDS .......... 4

V. PLAINTIFFS' CLAIMS ARE NOT ARBITRABLE .......... 5

A. "Direct Benefits" Equitable Estoppel Does Not Apply to Plaintiffs .......... 5

1. *International Paper* Limits Estoppel to Contract Claims. .......... 7

2. The Ninth Circuit Rejects Equitable Estoppel for Statutory Claims. .......... 9

3. Plaintiffs Did Not Knowingly Embrace or Exploit the Terms Before Litigation. .......... 9

4. Plaintiffs Received No Direct Benefit From the Terms. .......... 11

5. Defendants, not Plaintiffs, Seek to Exploit the Terms. .......... 13

B. The Ninth Circuit and Other Courts Have Repeatedly Rejected Defendants' Other Estoppel and Standing Theories. .......... 15

C. Jumio, Yodlee, Trustly, and Mifsud Cannot Compel Arbitration. .......... 19

D. Defendants Fail to Provide Required Evidence of Arbitrability. .......... 21

E. No Stay Is Warranted .......... 21

VI. DEFENDANTS' ALTERNATIVE MOTION TO DISMISS ALSO FAILS .......... 21

VII. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D. v. Credit One Bank, N.A.*,
885 F.3d 1054 (7th Cir. 2018)........................................ 6, 14

*A.O.A. v. Doe Run Res. Corp.*,
2011 WL 6091724 (E.D. Mo. Dec. 7, 2011)........................................ 11

*Adzhikosyan v. AT&T Corp.*,
2021 WL 5982604 (C.D. Cal. Dec. 17, 2021) ........................................ 6, 12

*Arellano v. T-Mobile USA, Inc.*,
2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ........................................ 20

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ........................................ 6

*AtriCure, Inc. v. Meng*,
12 F.4th 516 (6th Cir. 2021)........................................ 6

*B.F. v. Amazon.com*,
858 F. App'x 218 (9th Cir. 2021) ........................................ 6, 9, 15, 16

*Bracken Constr. Co., Inc. v. Liebherr-Am., Inc.*,
2025 WL 511117 (S.D. Miss. Feb. 14, 2025)........................................ 11

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
345 F.3d 347 (5th Cir. 2003)........................................ 4

*Burgoon v. Narconon of N. Cal.*,
125 F. Supp. 3d 974 (N.D. Cal. 2015) ........................................ 9, 11

*Coatney v. Ancestry.com DNA, LLC*,
93 F.4th 1014 (7th Cir. 2024)........................................ 13

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006)........................................ 5, 9, 15, 16

*Curran v. Sideprize LLC*,
2025 WL 1927786, (Mass. Super. Apr. 30, 2025)........................................ 17, 18

*Davis v. Orme*,
36 Ala. 540 (1860) ........................................ 18, 19

*Donovan v. Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) ........................................ 12

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*,
269 F.3d 187 (3d Cir. 2001) ........ 5, 10

*Everett v. Paul Davis Restoration, Inc.*,
771 F.3d 380 (7th Cir. 2014) ........ 6

*Fair Gaming Advocates MA LLC v. VGW Holdings Ltd.*,
2024 WL 5279408 (Mass. Super. Dec. 12, 2024) ........ 17

*Ferreira v. Uber Techs., Inc.*,
2023 WL 7284161 (N.D. Cal. Nov. 3, 2023) ........ 20

*Foster v. Sears, Roebuck & Co.*,
837 F. Supp. 1006 (W.D. Mo. 1993) ........ 8

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ........ 19

*Great Am. Ins. Co. v. Gemma Power Sys., LLC*,
2018 WL 6003968 (S.D. Ohio Nov. 15, 2018) ........ 8

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ........ 4, 21

*Haskins v. First Am. Title Ins. Co.*,
866 F. Supp. 2d 343 (D.N.J. 2012) ........ *passim*

*Houghton v. Leshner*,
2024 WL 5154071 (N.D. Cal. Nov. 25, 2024), *aff'd sub nom. Houghton v. Polychain Alchemy, LLC*, 2025 WL 2965204 (9th Cir. Oct. 21, 2025) ........ 19

*Hrapoff v. Hisamitsu Am., Inc.*,
2022 WL 2168076 (N.D. Cal. June 16, 2022) ........ 22

*Humphrey v. Viacom, Inc.*,
2007 WL 1797648 (D.N.J. June 20, 2007) ........ 19, 22

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) ........ 5, 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ........ 22

*In re Daily Fantasy Sports Litig.*,
2019 WL 6337762 (D. Mass. Nov. 27, 2019) ........ 6, 10, 16, 18

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) ........ 9

*In re Ring LLC Priv. Litig.*,
2021 WL 4557222 (C.D. Cal. Sept. 3, 2021) ........ 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
838 F. Supp. 2d 967 (C.D. Cal. 2012) ........ 11

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
2023 WL 3440399 (N.D. Cal. May 12, 2023) ........ 23

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*,
2007 WL 951943 (N.D. Ill. Mar. 27, 2007) ........ 8

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
206 F.3d 411 (4th Cir. 2000) ........ *passim*

*Javitch v. First Union Secs., Inc.*,
315 F.3d 619 (6th Cir. 2003) ........ 8

*Javitch v. Prudential Secs., Inc.*,
2011 WL 251099 (N.D. Ohio Jan. 25, 2011) ........ 8

*Johnson v. McGregor*,
55 Ill. App. 530 (Ill. App. Ct. 1894), *aff'd,* 157 Ill. 350 (1895) ........ 19

*Kater v. Churchill Downs Inc.*,
886 F.3d 784 (9th Cir. 2018) ........ 13

*Khachatryan v. Mercedes-Benz USA, LLC*,
2025 WL 2955995 (N.D. Cal. Sept. 8, 2025) ........ 20

*Kimble v. EOG Res., Inc.*,
732 F. Supp. 3d 1326 (D.N.M. 2024), *appeal dismissed*, 2024 WL 4903935 (10th Cir. Oct. 10, 2024) ........ 6

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ........ 4, 19

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 4

*Kutza v. Williams-Sonoma, Inc.*,
2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ........ 23

*Lawson v. Life of the S. Ins. Co.*,
648 F.3d 1166 (11th Cir. 2011) ........ 5

*Lubin v. Starbucks Corp.*,
122 F.4th 1314 (11th Cir. 2024) ........ 17

*Mac Tools v. Diaz*,
2012 WL 1409395 (S.D. Ohio Apr. 13, 2012) ........ 8

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015)........ 22

*Mohammad v. T-Mobile USA, Inc.*,
2018 WL 6249910 (E.D. Cal. Nov. 29, 2018) ........ 20

*Mundi*, *v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009)........ 15, 16

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013)........ 16

*Namisnak v. Uber Techs., Inc.*,
971 F.3d 1088 (9th Cir. 2020)........ 9

*NCMIC Ins. Co. v. Allied Pros. Ins. Co.*,
110 F.4th 1072 (8th Cir. 2024)........ 8, 11

*NCMIC Ins. Co. v. Allied Pros. Ins. Co.*,
694 F. Supp. 3d 1164 (D. Minn. 2023), *aff'd*, 110 F.4th 1072 (8th Cir. 2024) ........ 4, 11

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)........ 5, 12

*Noble Drilling Servs., Inc. v. Certex USA, Inc.*,
620 F.3d 469 (5th Cir. 2010)........ 7, 10

*Oehme, van Sweden & Associates, Inc. v. Maypaul Trading & Services Ltd.*,
902 F. Supp. 2d 87 (D.D.C. 2012) ........ 5

*Olshan Found. Repair & Waterproofing v. Otto*,
276 S.W.3d 827 (Ky. Ct. App. 2009) ........ 5

*Orellana v. Roblox Corp.*,
769 F. Supp. 3d 1273 (M.D. Fla. 2025) ........ 10

*Ottesen v. Hi-Tech Pharms., Inc.*,
2024 WL 5205539 (N.D. Cal. Dec. 23, 2024) ........ 22

*Partida v. Schenker Inc.*,
2024 WL 1354432 (N.D. Cal. Mar. 29, 2024)........ 22

*Pecanha v. The Hain Celestial Grp., Inc.*,
2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ........ 22

*Peck Ormsby Constr. Co. v. City of Rigby*,
526 F. App'x 769 (9th Cir. 2013) ........ 8

*Prachun v. CBIZ Benefits & Ins. Servs., Inc.*,
2015 WL 5162522 (S.D. Ohio Sept. 3, 2015) .... 8

*Price v. Credit Acceptance Corp.*,
2010 WL 2400464 (S.D. Miss. June 11, 2010) .... 8

*Pyciak v. Credit One Bank, N.A.*,
2018 WL 4787660 (E.D. Mich. Oct. 4, 2018) .... 13

*R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n.*
384 F.3d 157 (4th Cir. 2004) .... 2, 6, 7

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) .... 16

*Reid v. Doe Run Res. Corp.*,
701 F.3d 840 (8th Cir. 2012) .... 6

*Revitch v. DIRECTV, LLC*,
977 F.3d 713 (9th Cir. 2020) .... 4, 20

*S. G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) .... 12

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
566 F. Supp. 3d 1019 (S.D. Cal. 2021) .... 12

*ServiceMaster Co. v. Tesh*,
2012 WL 12933225 (W.D. Tenn. Nov. 8, 2012) .... 6, 8

*Stafford v. Rite Aid Corp.*,
998 F.3d 862 (9th Cir. 2021) .... 9

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) .... 4

*Walker v. Collyer*,
85 Mass. App. Ct. 311 (2014) .... 5

*Wash. Mut. Fin. Grp., LLC v. Bailey*,
364 F.3d 260 (5th Cir. 2004) .... 5, 8

*Weinberg v. Twitter, Inc.*,
2024 WL 3908112 (N.D. Cal. Aug. 21, 2024) .... 23

*Wilson v. Playtika, Ltd.*,
349 F. Supp. 3d 1028 (W.D. Wash. 2018) .... 13

*Zamudio v. Aerotek, Inc.*,
698 F. Supp. 3d 1202 (E.D. Cal. 2023) .... 21

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
417 F.3d 682 (7th Cir. 2005)........................................................................................ 5

*Zynga, Inc. v. Mills*,
2025 WL 1198744 (Ala. Apr. 25, 2025)........................................................................ 18

**Statutes**

9 U.S.C. § 4.............................................................................................................. 4, 19

Ill. Comp. Stat. 5/28-8........................................................................................................ 18

Ky. Rev. Stat. Ann. § 372.040 ........................................................................................... 18

Mass. Gen. Laws Ann. ch. 137, § 1 ................................................................................... 18

Miss. Code Ann. § 87-1-5.................................................................................................. 18

N.J. Stat. Ann. § 2A:40-6................................................................................................... 18

Ohio Rev. Code Ann. § 3763.04........................................................................................ 18

S.C. Code Ann. § 32-1-10.................................................................................................. 18

Unfair Competition Law ........................................................................................... 7, 9, 13

**Rules**

Rule 12 ............................................................................................................................. 23

Rule 23 ............................................................................................................................. 23

**Other Authorities**

21 Williston on Contracts § 57:19 (4th ed.)........................................................................ 11

# I. INTRODUCTION

Defendants ask this Court to compel Plaintiffs' claims to arbitration pursuant to an arbitration agreement Plaintiffs never signed, in an agreement Plaintiffs do not seek to enforce and never benefitted from, and which several defendants never signed either. Courts do not compel arbitration in those circumstances.

Defendants VGW Holdings US Inc., VGW US, Inc., VGW Luckyland, Inc., Laurence Escalante, VGW Holdings Limited, VGW Malta Holding Limited, VGW Malta Limited, VGW Games Limited, and VGW GP Limited (collectively, "VGW") own and operate illegal online casinos ("VGW Casinos"). Plaintiffs are spouses of individuals who gambled at VGW Casinos and lost money as a result. Under consumer protection statutes of District of Columbia, Georgia, Illinois, Kentucky, Massachusetts, Mississippi, Missouri, New Jersey, New Mexico, Ohio, South Carolina, Tennessee, and Wisconsin, Plaintiffs are entitled to recover from VGW and the other defendants who have aided and abetted VGW's misconduct: Jumio Corporation ("Jumio"), Yodlee, Inc. ("Yodlee"), Trustly, Inc. ("Trustly"), and Brian Christopher Misfud ("Misfud"). Plaintiffs have never gambled at the online casinos, nor have they agreed to the clickwrap terms and conditions ("Terms") on which Defendants base their bid for arbitration. Thus, Plaintiffs' claims are not arbitrable for at least three reasons.

<u>First</u>, Defendants claim that Plaintiffs are bound by the agreements their spouses signed, asserting equitable estoppel precludes Plaintiffs from proceeding in this Court. But the narrow equitable estoppel doctrine does not apply here. A signatory defendant can only bind a nonsignatory plaintiff to arbitrate if the nonsignatory knowingly accepted and exploited the contract's benefits prior to the dispute arising, received direct benefits from the contract, and then sought to avoid the agreement's arbitration requirement. Defendants fail to prove any of these elements.

Defendants' reliance on *International Paper* underscores how equitable estoppel is the exception and not the rule. In *International Paper*, the Fourth Circuit established a narrow equitable estoppel rule that only applies where a nonsignatory attempts to enforce contractual rights and the governing contract contains an arbitration provision. *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000). Here, by contrast, the

nonsignatories' claims have nothing to do with the Terms; their claims are consumer protection claims that exist independently of the contract.

Defendants ask the Court to allow the exception to swallow the rule, claiming that if a contract term is even partially relevant to Plaintiffs' claims, equitable estoppel compels arbitration. But the Fourth Circuit explicitly rejected Defendants' overbroad reading of *International Paper* in *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*. 384 F.3d 157, 161–62 (4th Cir. 2004). Defendants fail to identify any case that has ever adopted their unreasonably broad reading of *International Paper*.

Second, Defendants argue Plaintiffs' claims must be compelled to arbitration because they "stand in the shoes" of their spouses. Here, too, Defendants attempt to extend a narrow doctrine beyond what the courts intended. Defendants' own cases demonstrate this theory is only applied to ***uninjured strangers*** who lack their own Article III injury. But Plaintiffs here are all spouses who assert their own statutory rights of action for injuries to their own property interests.

Third, the non-VGW Defendants (Jumio, Yodlee, Trustly, and Misfud) attempt to enforce VGW's Terms—which they never signed—as third party beneficiaries. Yet the non-VGW Defendants offer no evidence that they could qualify as third party beneficiaries, and there is no equitable estoppel rule that allows nonsignatories to enforce arbitration agreements against other nonsignatories. The non-VGW Defendants also claim that the issue of whether they can enforce the Terms was delegated to an arbitrator. But a delegation clause cannot be enforced against nonsignatories like Plaintiffs.

While the Court need not go further, even if Defendants could prevail on their overly broad readings of estoppel law, they would still not succeed because Defendants have failed to put forth the evidentiary showing necessary to establish that Plaintiffs' spouses even agreed to arbitration. The Court is not required to accept Defendants' say-so without further proof.

Defendants alternatively ask the Court to dismiss Plaintiffs' claims for a purported lack of standing to sue based on the laws of states in which they do not reside. But both the Ninth Circuit and this Court have repeatedly held this is not a standing issue resolved at the pleadings stage, but an adequacy and typicality issue resolved at class certification.

Defendants bear the heavy burden to prove that equitable estoppel applies or that Plaintiffs lack standing. They fail to do either. Accordingly, Defendants' motion ("Mot.") should be denied.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether equitable estoppel applies to Plaintiffs' claims where Plaintiffs assert independent statutory claims and did not knowingly exploit or benefit from VGW's Terms;

2. Whether Plaintiffs are bound to arbitrate their independent statutory claims based on Defendants' "standing in the shoes" theory;

3. Whether non-VGW Defendants (Jumio, Yodlee, Trustly, and Brian Christopher Misfud) can compel arbitration as non-signatories to the Terms against other non-signatories to the Terms;

4. Whether Defendants have met their burden to prove by competent evidence that Plaintiffs' spouses agreed to arbitrate their claims; and

5. Whether Defendants have proven that Plaintiffs do not have standing to assert claims based on the laws of states in which they do not reside.

## III. STATEMENT OF FACTS

Plaintiffs and Class Members are the spouses and children of gamblers who collectively lost tens to hundreds of millions of dollars or more in real money from gambling at the illegal online casinos operated by Defendants. Compl. ¶ 18. The VGW Casinos operate largely the same as any other casino: the casinos take and convert gamblers' cash into virtual casino chips or slot machine credits (referred to as "coins"), and then gamblers wager those virtual casino coins in a variety of games of chance. *Id.* ¶ 2. VGW attempts to skirt states' anti-gambling laws by giving gamblers two types of casino coins: (1) "gold" coins ("GC"), which can be wagered but cannot be redeemed for cash; and (2) "sweepstakes" coins ("SC"), which are each worth $1 and can be redeemed for $1 in cash. *Id.* ¶ 5. VGW's claim that SC are "free" does not make them valueless, and that the gold coins cannot be redeemed for cash does not make them valueless, either. *Id.* ¶ 8.

Plaintiffs did not gamble at the VGW Casinos and never entered into any agreement with VGW nor any other Defendant. *E.g.*, *id.* ¶ 22. Plaintiffs bring statutory claims seeking statutory damages for injuries to their individual property rights and interests. *E.g.*, *id.* ¶ 21. Defendants

assert that Plaintiffs' spouses entered into agreements with VGW by accepting VGW's Terms via a clickwrap agreement that contained an arbitration provision. Mot. at 5, Exs. E–I § 24.

## IV. LEGAL STANDARDS

The "strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citation omitted). "To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1142 (9th Cir. 1991) (quoting *AT & T Techs., Inc. v. Commc'ns Workers,* 475 U.S. 643, 648 (1986)). Courts therefore "determine (1) whether a valid agreement to arbitrate exists and (2) whether it encompasses the dispute at issue." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719 (9th Cir. 2020) (cleaned up).

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). "[A] court should be more reluctant to compel a non-signatory to arbitrate" than a signatory. *NCMIC Ins. Co. v. Allied Pros. Ins. Co.*, 694 F. Supp. 3d 1164, 1172 (D. Minn. 2023), *aff'd*, 110 F.4th 1072 (8th Cir. 2024).

In the Ninth Circuit, "the party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014), with the party opposing the motion receiving "the benefit of all reasonable doubts and inferences." *Three Valleys*, 925 F.2d at 1141. Like summary judgment, "under [9 U.S.C.] § 4, a court is not authorized to dispose of a motion to compel arbitration until after factual disputes have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 671 (9th Cir. 2021). Accordingly, if the Court "concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.* at 672.

## V. <u>PLAINTIFFS' CLAIMS ARE NOT ARBITRABLE.</u>

### A. <u>"Direct Benefits" Equitable Estoppel Does Not Apply to Plaintiffs.</u>

Defendants attempt to bind nonsignatory Plaintiffs to their spouses' purported assent to the Terms through "direct benefits" equitable estoppel. Mot. at 9:7. But direct benefits estoppel only applies to nonsignatories that knowingly exploit a written contract with an arbitration clause prior to litigation and then later sue to enforce such rights.

Under direct benefits estoppel, "a non-signatory to an arbitration agreement may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of the agreement ***and*** receives benefits flowing directly from the agreement," but then attempts to avoid arbitration under that same agreement. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (citation omitted and emphasis added); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("[*N*]*onsignatories* have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)) (emphasis in original)). The nonsignatory's knowing exploitation of the agreement must have occurred "[p]rior to [the] suit." *Comer*, 436 F.3d at 1102 (evaluating equitable estoppel against nonsignatory's pre-litigation conduct); *DuPont*, 269 F.3d at 200 (rejecting equitable estoppel because "there is no evidence that DuPont embraced the Agreement itself during the lifetime of the Agreement, or that it received any *direct* benefit under [it]" (emphasis in original)). "[T]he Ninth Circuit has emphasized that the doctrine of equitable estoppel is a narrow one and should not be expanded, regardless of what underlying state law applies." *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2014 WL 1338474, at *5 (N.D. Cal. Mar. 28, 2014) (collecting cases). The law of each of the Class States is the same. *See, e.g.*, *Oehme, van Sweden & Associates, Inc. v. Maypaul Trading & Services Ltd.*, 902 F. Supp. 2d 87 (D.D.C. 2012) (District of Columbia); *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011) (Georgia); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005) (Illinois); *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009) (Kentucky); *Walker v. Collyer*, 85 Mass. App. Ct. 311, 320–22 (2014) (Massachusetts); *Wash. Mut. Fin. Grp.*,

*LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004) (Mississippi) (cited by Mot. at 8:9–10); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846–48 (8th Cir. 2012) (Missouri); *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 351 (D.N.J. 2012) (New Jersey); *Kimble v. EOG Res., Inc.*, 732 F. Supp. 3d 1326, 1331 (D.N.M. 2024), *appeal dismissed*, 2024 WL 4903935 (10th Cir. Oct. 10, 2024) (New Mexico); *AtriCure, Inc. v. Meng*, 12 F.4th 516, 527–28 (6th Cir. 2021) (Ohio); *R.J. Griffin & Co.*, 384 F.3d at 161–62 (South Carolina); *ServiceMaster Co. v. Tesh*, 2012 WL 12933225 (W.D. Tenn. Nov. 8, 2012) (Tennessee) (cited by Mot. at 8:1–2); *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380 (7th Cir. 2014) (Wisconsin); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (stating "traditional principles" of state law govern the enforceability of arbitration agreements against nonsignatories).

Here, Defendants concede that Plaintiffs never used accounts with VGW, never referenced the Terms before this litigation, and assert independent statutory claims. Mot. at 4–6; *see, e.g.*, Compl. ¶¶ 22, 256–97. Defendants also do not identify a single cognizable direct benefit Plaintiffs received from the Terms (and do not assert that any were intended). Mot. at 6–14. These concessions alone foreclose Defendants' equitable estoppel argument. Indeed, courts consistently refuse to apply equitable estoppel in cases where a nonsignatory family member brings statutory claims against an online casino or service provider and that provider attempts to compel arbitration based on other family members' user agreements. *See, e.g.*, *In re Daily Fantasy Sports Litig.*, 2019 WL 6337762, at *12–13 (D. Mass. Nov. 27, 2019) (finding equitable estoppel inapplicable to nonsignatory family members of gamblers suing under Massachusetts' gambling loss recovery statute); *B.F. v. Amazon.com*, 858 F. App'x 218, 220–21 (9th Cir. 2021) (holding non-signatory children who were illegally recorded by Amazon's Alexa service could not be compelled to arbitrate their statutory wiretapping claims under the laws of eight states based on equitable estoppel through their parents' agreement to Amazon's terms of service); *Adzhikosyan v. AT&T Corp.*, 2021 WL 5982604, at *1, *5–*7 (C.D. Cal. Dec. 17, 2021) (finding non-signatory plaintiff's statutory privacy claims for being recorded without his consent when calling AT&T about his mother's AT&T account were not subject to equitable estoppel under the mother's account terms); *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064–65 (7th Cir. 2018) (holding non-signatory

plaintiff's statutory claims for credit card company's collections calls on mother's account were not subject to equitable estoppel under mother's cardholder agreement even where plaintiff was an authorized credit card user).

### 1. *International Paper* Limits Estoppel to Contract Claims.

Defendants misstate the test for equitable estoppel because they overread *International Paper*. Defendants assert that *International Paper* created a "seminal" new equitable estoppel rule that compels arbitration here. Mot. at 7–10. Not so. *International Paper* involved a plaintiff that sought to enforce contractual rights and remedies, unlike this case where Plaintiffs seek to recover under consumer and family protection statutes. *Int'l Paper*, 206 F.3d at 414, 418. That difference dooms Defendants' argument because equitable estoppel is limited to contract claims.

Defendants boldly claim *International Paper* compels claims to arbitration wherever "the contract containing the arbitration clause 'provides part of the factual foundation for [the] claim.'" Mot. at 8:6. But the Fourth Circuit specifically rejected that argument, confirming that its own holding in *International Paper* was ***limited to contract enforcement claims.*** *International Paper* was decided because the "entire case hinge[d] on the asserted [contract] rights" and plaintiffs attempted to "enforce those contractual rights" through contract claims:

> In urging arbitration in this case, Griffin relies on the first sentence of the block quote to argue that a nonsignatory seeks a direct benefit whenever a 'contract provides part of the factual foundation' for its complaint. ***Griffin does not read far enough***. As the quote ultimately reveals, we concluded that International Paper's '*entire case*'—to recover because the saw was a lemon—'hinge[d] on its asserted rights under the [] contract.' In attempting to enforce those rights, International Paper was seeking a direct benefit from the contract, and it was therefore estopped from avoiding the part of the contract that required arbitration.

*R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 161–62 (4th Cir. 2004) (emphasis added) (internal citations omitted); *see also Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474 & n.6 (5th Cir. 2010) (citing *Int'l Paper* as holding "the doctrine of direct benefits estoppel [] applies when a non-signatory sues to enforce certain terms in a contract containing an arbitration clause"); *Haskins*, 866 F. Supp. 2d at 350, 352 (D.N.J. 2012) (finding equitable estoppel inapplicable to New Jersey's UCL equivalent statute because, "[u]nlike *Int'l*

*Paper,* plaintiffs' claim does not 'hinge' on rights flowing from their policies" and plaintiffs are therefore not "'cherry-picking' beneficial contract terms").

Defendants do not (and cannot) identify a contract enforcement claim, do not (and cannot) identify a direct benefit Plaintiffs received or exploited prior to filing their lawsuit, and do not (and cannot) assert that Plaintiffs are attempting to "enforce" VGW's limitations of liability on VGW. Thus, *International Paper* does not help Defendants and instead crystallizes why the equitable estoppel doctrine does not apply to Plaintiffs.

Defendants' other cases demonstrate that courts draw a sharp line between a party that brings contract claims or invokes contract benefits before litigation (arbitrable) and a party that never accepts or benefits from the terms (not arbitrable). *See Bailey*, 364 F.3d at 262–63, 267–68 & n.1, 5 (5th Cir. 2004) (applied to contract claims; both spouses co-signed contract); *Foster v. Sears, Roebuck & Co.*, 837 F. Supp. 1006, 1007–08 (W.D. Mo. 1993) (spouse co-signed bank note and admitted was a party to the contract); *Prachun v. CBIZ Benefits & Ins. Servs., Inc.*, 2015 WL 5162522, *1, *5 (S.D. Ohio Sept. 3, 2015) (wife sued to enforce duties created by husband's employment agreement); *Mac Tools v. Diaz*, 2012 WL 1409395, *1, *5–6 (S.D. Ohio Apr. 13, 2012) (co-business owner wife performed under business contract and invoked contract's dispute clause); *Javitch v. Prudential Secs., Inc.*, 2011 WL 251099, *1–2, *7–8 (N.D. Ohio Jan. 25, 2011) (receiver bound by arbitration agreement embraced by the business under receivership); *Javitch v. First Union Secs., Inc.*, 315 F.3d 619 (6th Cir. 2003) (same); *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, 2018 WL 6003968, *1–2, *6–7 (S.D. Ohio Nov. 15, 2018) (asserting breach of contract claims); *Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, 2007 WL 951943, at *5–6 (N.D. Ill. Mar. 27, 2007) (same); *Price v. Credit Acceptance Corp.*, 2010 WL 2400464, *1, *4 (S.D. Miss. June 11, 2010) (same); *ServiceMaster Co. v. Tesh*, 2012 WL 12933225, *1–2, *10–11 (W.D. Tenn. Nov. 8, 2012) (company embraced employment agreement by acting as joint employer); *Peck Ormsby Constr. Co. v. City of Rigby,* 526 F. App'x 769, 770 (9th Cir. 2013) (city had "enjoy[ed] the benefits of the guarantee [contract]" for "years"); *but see NCMIC Ins. Co. v. Allied Pros. Ins. Co.*, 110 F.4th 1072, 1075 (8th Cir. 2024) (denying use of equitable estoppel where "[plaintiff] had not argued that it was entitled to rights or benefits under the policy").

### 2. <u>The Ninth Circuit Rejects Equitable Estoppel for Statutory Claims.</u>

The Ninth Circuit, applying the direct benefits test, has repeatedly found equitable estoppel inapplicable to nonsignatory plaintiffs litigating Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), or other statutory claims. For example, the Ninth Circuit affirmed that a nonsignatory plaintiff's UCL and CLRA claims could not be compelled to arbitration based on a contract between defendants and third parties. *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 866–67 (9th Cir. 2021) (holding equitable estoppel did not apply because "statutes and common law—not provisions in the contracts—entitle[d]" plaintiff to relief); *see also Comer*, 436 F.3d at 1101–02 (no equitable estoppel where nonsignatory's claims were "base[d] entirely on ERISA"); *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1095 (9th Cir. 2020) (denying estoppel where plaintiffs' ADA claims fully viable without any reference to Terms and Conditions); *In re Henson*, 869 F.3d 1052, 1060–61 (9th Cir. 2017) (stating "for equitable estoppel to apply . . . [plaintiff]'s claims must be based on '*the obligations imposed by the [Agreement]*'" and holding tort and UCL-equivalent claims do not qualify (emphasis in original) (citation omitted)); *Burgoon v. Narconon of N. Cal.*, 125 F. Supp. 3d 974, 993 (N.D. Cal. 2015) ("[T]he statutory and tort claims asserted by [plaintiff] in the instant case do not depend on the obligations (or even the existence) of the contract. Because of this, there is no inequity to remedy."); *Amazon.com*, 858 F. App'x at 220–21 (holding a nonsignatory does not knowingly exploit the contract when bringing claims based on "an independent duty," such as "state statutory claims").

Plaintiffs bring statutory claims for their personal, statutory harms that are pleaded without any reference to the Terms. Defendants do not argue otherwise, and none of Defendants' cases applied equitable estoppel in such circumstances. *See* Mot. at 6–10; *supra* at 8:12–9:3. Equitable estoppel does not apply here.

### 3. <u>Plaintiffs Did Not Knowingly Embrace or Exploit the Terms Before Litigation.</u>

Plaintiffs did not "knowingly embrace," "exploit," or receive benefits from the Terms prior to this litigation. This, too, bars Defendants' arbitration motion on its own. *E.g.*, *Comer*, 436 F.3d

at 1102 (evaluating nonsignatory's conduct "prior to his suit" and finding that being a "passive participant" in transactions related to a contract is not "knowing exploitation").

Defendants do not assert that Plaintiffs embraced, exploited, or benefitted from the Terms—or in fact took ***any action*** with respect to the Terms at all—prior to litigation. Instead, Defendants argue that Plaintiffs' ***claims*** exploit the Terms. Mot. at 9–10. This argument relies on a gross overstatement of the law because a defendant cannot use equitable estoppel to compel a nonsignatory to arbitration without demonstrating ***pre-litigation*** exploitation. *See International Paper*, 206 F.3d at 414, 415–8 (alleging pre-litigation exploitation and benefits for itself and its predecessor entity); *DuPont*, 269 F.3d at 200 & n.6 (finding equitable estoppel inapplicable because nonsignatory did not receive pre-litigation benefit from contract and explaining *International Paper*'s application of equitable estoppel was based on "the non-signatory [] also receiv[ing] a direct benefit under the contract during the lifetime of the contract").

Courts evaluating this issue in online casino and gaming cases have found that non-gambling family members never "embraced" or exploited the casino's terms of service. *In re Daily Fantasy Sports Litig.*, 2019 WL 6337762, at *12–13 (D. Mass. Nov. 27, 2019) (holding nonsignatory non-gambling spouses without asserted knowledge of casinos' terms did not "embrace" those terms, ***even by bringing state gambling loss recovery claims***); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1282, 1288 (M.D. Fla. 2025) (holding nonsignatory who merely used family members' online gaming accounts did not exploit the terms of service between the gaming provider and the family members).

In fact, Plaintiffs here did not even know the Terms existed prior to the lawsuit. *E.g.*, Compl. ¶ 22. Defendants do not assert that Plaintiffs had any knowledge of the Terms and do not cite any cases in which equitable estoppel was applied to Plaintiffs who were unaware of the contract at issue. *See* Mot. at 6-10; *supra* at 8:10–9:3. Courts that have expressly examined this issue have repeatedly refused to compel arbitration based on an estoppel theory when nonsignatories were unaware of the contract's terms prior to the dispute. *See, e.g.*, *Noble*, 620 F.3d at 473 (denying motion to compel arbitration based on equitable estoppel because plaintiff did not know of the contract or its terms and thus she could not have knowingly exploited or benefitted from them);

*Bracken Constr. Co., Inc. v. Liebherr-Am., Inc.*, 2025 WL 511117, at *7–*9 (S.D. Miss. Feb. 14, 2025) (same); *A.O.A. v. Doe Run Res. Corp.*, 2011 WL 6091724, at *4 (E.D. Mo. Dec. 7, 2011) (same).

Defendants attempt to skirt this established rule by arguing that Plaintiffs' claims could not exist "but for" the Terms, making those Terms "relevant." Mot. at 9:18 ("the virtual coins do not exist but for the Terms"); *id.* 10:12–13 (the Terms are "relevant" to whether the virtual coins are "things of value"). But courts routinely hold that a contract being a mere "but for" cause of a claim cannot trigger equitable estoppel. *See Burgoon*, 125 F. Supp. at 993 (N.D. Cal. 2015) ("[A] 'but-for' connection between the agreement and the challenged conduct is not enough."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 993 (C.D. Cal. 2012) (same); 21 Williston on Contracts § 57:19 (4th ed.) (stating mere existence of an agreement that incidentally benefits a nonsignatory is not a direct benefit). *NCMIC*, a case advanced by Defendants, further cements this principle. There, the Court cited *International Paper* and found equitable estoppel inapplicable because "the mere fact that a contract had to exist for the dispute to arise does not satisfy the 'direct benefit' test." 110 F.4th at 1075. Indeed, if defendants could compel nonsignatory plaintiffs' claims to arbitration whenever the claims related to a contract, then estoppel would invalidate the fundamental rule that arbitration requires mutual assent.

**4. <u>Plaintiffs Received No Direct Benefit From the Terms.</u>**

Defendants fail to identify any ***direct benefit*** flowing from the Terms to Plaintiffs that are recognized under equitable estoppel. Nor can they: Plaintiffs never gambled at the VGW casinos, and Plaintiffs were harmed—not benefitted—by Defendants' illegal gambling scheme that caused substantial financial harm to Plaintiffs.

The specific terms VGW claims benefit Plaintiffs do nothing of the sort. Those terms merely facilitate the illegal gambling scheme that injured Plaintiffs and purport to limit VGW's liability. *See* Mot. at 9-10; *infra* § 5. The Terms cannot be fairly said to benefit Plaintiffs. To the contrary, to the extent the Terms purport to allow the illegal gambling to occur, and dissuade gamblers from enforcing their claims against VGW, the Terms only harm Plaintiffs. These consequences cannot

seriously be considered direct benefits that Plaintiffs are inequitably exploiting against VGW. *See S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1036 (S.D. Cal. 2021) (finding equitable estoppel inapplicable to child injured by Peloton treadmill while his parent used it because "S.S. never benefitted from the services provided by Peloton. Instead, S.S. was harmed by Mr. Stern's use of [them]."); *Nguyen*, 763 F.3d at 1180 ("It can hardly be said here that the choice of New York law—chosen unilaterally by [defendants]—was intended to benefit [nonsignatory plaintiff]. Any benefit derived by [plaintiff from it] . . . is merely incidental.").

Further, it is undisputed that Plaintiffs never had VGW accounts or gambled at the VGW Casinos. Mot. at 4; *see also* Compl. ¶ 22. It is also undisputed that the Terms apply only to gamblers, not Plaintiffs. *See* Mot. at 4 (stating only gamblers accepted the Terms, which are accepted "as a condition to gameplay"); Cavallaro Decl., Exs. E–I at Preamble ("These Terms and Conditions form a binding legal agreement between ***you*** and us and apply to ***your use*** of any of our Games or our Platform"), § 1 ("Player or ***you*** means any person who ***Participates***"; "***Participate*** means ***playing any Games or using our Platform***"), § 24 (arbitration agreement applies to disputes "between ***you*** and VGW Group") (emphases added). Thus, the Terms ***do not even apply*** to Plaintiffs, further confirming that no benefits could or did flow ***directly*** from the Terms to a nonsignatory, non-gambling Plaintiff. *See, e.g.*, *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 955 (N.D. Cal. 2023) (finding that cryptocurrency user agreement "contains clear-cut language showing an intent to arbitrate disputes between the signatories only" because it states the agreement was between "**you and Coinbase**," and arbitration was limited to disputes relating to "your access to or use of the Services of the Coinbase Site" and other disputes "between us"; "The agreement does not state that the obligations and rights thereunder extend to a nonsignatory.").

As Defendants' own cases demonstrate, when courts apply equitable estoppel to bind nonsignatory injured plaintiffs to online user agreements accepted by other ***family members***, it is because the plaintiff either created her own account in the past or used the family member's account. *Compare S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 622 (N.D. Cal. 2025) (finding equitable estoppel applied to child who used father's online gaming account that father "maintained for both of their use") (cited by Mot. at 7:5–6) *with Adzhikosyan v. AT&T Corp.*, 2021 WL 5982604,

at 7 (C.D. Cal. Dec. 17, 2021) ("Absent allegations or evidence that [son] used his mother's account or reaped its benefits, the Court sees no equitable reason to hold [son] to arbitration provisions to which he never agreed.") *and Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1017–18, 1025–27 (7th Cir. 2024) (holding nonsignatory family members not bound to arbitrate under terms of DNA ancestry analyses purchased on their behalf as gifts because "there are no allegations suggesting the plaintiffs even accessed their genetic analyses") *and Pyciak v. Credit One Bank, N.A.*, 2018 WL 4787660, at *3 (E.D. Mich. Oct. 4, 2018) (finding nonsignatory husband who read credit card terms, but never used the credit card, did not "*directly* benefit[]" from cardholder agreement, and finding "household purchases made on the card" to be "too indirect and attenuated to enforce arbitration under an estoppel theory" (emphasis in original)).[1] Here, Defendants do not contend that any plaintiff created his or her own account or used his or her spouse's account, so equitable estoppel does not apply.

5. **<u>Defendants, not Plaintiffs, Seek to Exploit the Terms.</u>**

Defendants also fail to prove that ***Plaintiffs*** exploited the Terms. The Complaint does not rely on the irrelevant Terms, and in fact, the Complaint does not even mention the Terms. The Terms have no bearing on whether GC and SC are "things of value" under the various state statutes. These ***strict liability*** statutes have no *mens rea* element or references to contract.[2] No element in these statutes turns on VGW's self-serving definitions in its contract of adhesion, or whether VGW knew or believed it was engaging in gambling. *See id.*; *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 786–88 (9th Cir. 2018) (affirming virtual coins identical to VGW's GCs to be "things of value" despite the online casinos' self-serving terms purporting them to be "free", valueless, and not used for gambling); *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1042 (W.D. Wash. 2018) (stating "even if the Court considers the fact that the vast majority of players do not purchase coins, this

---

[1] *See also In re Ring LLC Priv. Litig.*, 2021 WL 4557222, at *3 (C.D. Cal. Sept. 3, 2021) (finding nonsignatory family members not bound by family members' agreement to Ring's terms of service in part because "there is no reason to believe that the Plaintiffs are in any way knowingly seeking the benefits of Ring's Terms" through UCL, CLRA, and tort claims).

[2] *See* Compl. ¶¶ 290 (D.C.); 299 (Georgia); 308–09 (Illinois); 317–18 (Kentucky); 327 (Massachusetts); 336–37 (Mississippi); 345–46 (Missouri); 355–57 (New Jersey); 366–67 (New Mexico); 376–77 (Ohio); 386–87 (South Carolina); 396–97 (Tennessee); 406–08 (Wisconsin).

has no bearing on whether they are a 'thing of value' under the Ninth Circuit's reasoning" (citing *Kater*, 886 F.3d at 787)). The Terms are irrelevant to Plaintiffs' claims.

This conclusion is confirmed by the specific terms Defendants identify as being "relevant" to Plaintiffs' claims. *See* Mot. at 9:20–10:6. These terms are relevant only to ***VGW's defenses***. *See id.* (citing terms that (i) define GC as valueless, (ii) state gamblers' play is only for entertainment and not gambling purposes, (iii) reserve VGW's ability to ban gamblers from the casinos, and (iv) limit VGW's liability). VGW cannot repackage its contract-based defenses against gamblers as ***Plaintiffs'*** direct exploitation of those terms. *See, e.g.*, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064–65 (7th Cir. 2018).

*A.D. v. Credit One Bank, N.A.* is on all fours. In *A.D.*, a nonsignatory plaintiff asserted a TCPA claim against her mother's credit card issuer. *Id.* at 1058. The credit card company argued plaintiff's TCPA claim depended on the cardholder agreement because "[w]hether A.D. consented to the calls" under the statute "depends on whether [the mother's] consent under the cardholder agreement can be imputed to A.D.," which in turn "depends on the terms of the cardholder agreement." *Id.* at 1064–5. The Seventh Circuit found defendant Credit One's "attempts to characterize A.D.'s straightforward TCPA claim as a claim seeking benefits under the cardholder agreement" to be "convoluted and unpersuasive." *Id.* at 1064. Rather, because "[c]onsent is an affirmative defense under the TCPA," it was not an element of plaintiff's claim. *Id.* at 1065. The Court further explained: "If we were to hold A.D. amenable to the cardholder agreement arbitration clause simply because, as a matter of affirmative defense in the present action, Credit One might argue that Ms. Serrano consented to the calls when she signed that agreement, we would 'threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement.'" *Id.* (quoting *Bridas S.A.P.I.C.*, 345 F.3d at 361). The same logic applies here: Plaintiffs' statutory claims do not "depend[] on the terms of the [VGW] agreement," which Defendants invoke for their defense. *See id.* Thus, "[i]n no way can [Plaintiffs'] cause[s] of action be considered premised on the [VGW] agreement." *See id.*

Defendants fail to identify any case that has ever compelled a non-signatory plaintiff to arbitrate a non-contract claim under an agreement the non-signatory plaintiff does not try to enforce and never benefited from. This Court should not be the first.

### B. <u>The Ninth Circuit and Other Courts Have Repeatedly Rejected Defendants' Other Estoppel and Standing Theories.</u>

In addition to direct benefits estoppel, Defendants appear to invoke two other inapplicable doctrines: the "close relationship" or "intertwined claims" theory of equitable estoppel, and the "standing in the shoes" theory. Mot. at 8–12. Neither theory applies here.

<u>First</u>, the Ninth Circuit has repeatedly held that direct benefits estoppel is the ***only*** estoppel that can bind a nonsignatory to an arbitration agreement, and has squarely rejected every other attempt to bind nonsignatories through other theories. *See, e.g.*, *Mundi*, *v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). As the Ninth Circuit explained, there are "two types of equitable estoppel in the arbitration context. In the first, a ***nonsignatory*** may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement. . . . Under the second, a ***signatory*** may be required to arbitrate a claim brought by a nonsignatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *Id.* (quoting *DuPont*, 269 F.3d at 201) (internal quotation marks omitted); *see also Comer*, 436 F.3d at 1101–02 ("Because Smith Barney is invoking equitable estoppel against a nonsignatory, it is the first line of cases that is relevant."); *Amazon.com*, 858 F. App'x at 221 (stating the "'close-relationship' theory of estoppel" is "only used by non-signatories to bind signatories to arbitration, not the reverse . . . [and so] Amazon as a signatory cannot use this theory").

Defendants do not expressly ask this Court to apply the "close relationship" or "intertwined claims" theory, but Defendants quote those tests and argue that the Court should apply them. *See* Mot. at 8–12. For example, Defendants argue that Plaintiffs must arbitrate their claims because those claims supposedly: (i) are "'**founded**' on the Terms"; (ii) "**rely** on the [Terms]"; (iii) are "intimately **founded** in and **intertwined** with the [Terms'] underlying contract obligations";

(iv) "arise[] from the signatory's contractual relationship"; and (v) "**would be required** to [be] arbitrate[ed]" **if "their spouses sued . . . themselves**." Mot. at 8:10–13, 8:25–28, 10:22–11:4, 12:11–12 (emphasis added). These arguments invoke the inapplicable "close relationship" or "intertwined claims" theory of estoppel—not direct benefits estoppel—and thus fail because Plaintiffs are ***not signatories***. *See, e.g.*, *Mundi*, 555 F.3d at 1046 (stating "under the [non-direct benefits theory], a signatory may be required to arbitrate a claim brought by a nonsignatory based on "a **close relationship**" and "the fact that the claims were **intertwined** with the underlying contractual obligations" (emphasis added)); *Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1229 (9th Cir. 2013) (explaining a signatory can be compelled to arbitration by a nonsignatory if the signatory brings claims that "**rely** on . . . or [] are intimately **founded** in and **intertwined** with the underlying contract" (emphasis added)); *Comer*, 436 F.3d at 1101–3 (stating direct benefits estoppel cannot be found based on whether a "claim *arises out of* the underlying contract"); *see also Amazon.com*, 858 F. App'x at 220 (holding direct benefits equitable estoppel did not bind nonsignatory child plaintiffs even though "if the [signatory] parents brought the same claims" themselves, they would be required to arbitrate); *In re Daily Fantasy Sports Litig.*, 2019 WL 6337762, at *12 (D. Mass. Nov. 27, 2019) (holding direct benefits estoppel cannot force nonsignatory family members "to arbitrate simply because the player plaintiffs are obliged to do so by their arbitration agreements with the [casino] defendants").

The Ninth Circuit has also repeatedly and clearly expressed that it will not expand, lower, or change the requirements to apply either equitable estoppel test. *Mundi*, 555 F.3d at 1046 ("[I]n light of the general principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond [its] very narrow confines."); *Murphy,* 724 F.3d at 1229 ("Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined."); *Rajagopalan v. NoteWorld, LLC,* 718 F.3d 844, 847 (9th Cir. 2013) ("[W]e decline to expand the [equitable estoppel] doctrine."); *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2014 WL 1338474, at *5 (N.D. Cal. Mar. 28, 2014) ("[T]he Ninth Circuit has emphasized that the doctrine of equitable estoppel is a narrow one and

should not be expanded, regardless of what underlying state law applies."). As a result, neither test compels arbitration here: the first (direct benefits estoppel) fails as discussed above, *see supra* at 5–15, and the second (close relationship or intertwined) cannot apply because Plaintiffs are not signatories.

Second, Defendants' argument conflates equitable estoppel issues with standing issues. As the Eleventh Circuit expressly held, theories about derivative claims and standing in another's shoes address standing issues, "***not the equitable estoppel doctrine***." *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1322–23 (11th Cir. 2024) (rejecting application of such theories to equitable estoppel; finding equitable estoppel inapplicable when a plaintiff "seek[s] relief under a statute" and "is not suing to enforce or avoid any provision of [an] agreement" (emphasis added)). *Id.* Moreover, the *Lubin* Court further concluded that theories "dependent on a wrong committed against [someone who is] ***not the plaintiff***" do not apply when the plaintiff suffers his own injury. *Id.* at 1322 (emphasis added).

Indeed, Defendants' own cases demonstrate courts only apply the "standing in the shoes" theory to ***uninjured***, non-family member strangers with zero connection to (or knowledge of) the parties, their families, or the gambling transactions at issue. *See* Mot. at 12:11 (confirming that Defendants' cases all involved uninjured "***strangers***").

For example, Defendants first point to *Fair Gaming Advocates MA LLC v. VGW Holdings Ltd.*, where plaintiff was a corporate entity with no connection to VGW, the Terms, the gambling or gamblers—and was attempting to use the loss recovery statutes to siphon recoveries away from gamblers. 2024 WL 5279408, at *2 (Mass. Super. Dec. 12, 2024) ("Nothing in the case law or legislative history suggests that the 18th century Legislature wanted to create separate new entities who would profit by collecting treble damages, in lieu of money being returned to the gamblers who lost it."). Thus, because Fair Gaming did not suffer its own injury, the court found that Fair Gaming necessarily "seeks to stand in the shoes" of gamblers who suffered an Article III injury. *Id.*

Defendants next point to *Curran v. Sideprize LLC*, which also applied *Fair Gaming*'s standing in the shoes theory to a complete stranger plaintiff—one who "[did] not allege that he

ever" gambled or lost money, did "not identify any individual who allegedly lost at gambling," and yet sought to recover their injuries. 2025 WL 1927786, at *1–2 (Mass. Super. Apr. 30, 2025) (following *Fair Gaming* because it was "on all fours"). Again, the court found that an uninjured stranger must stand in gamblers' shoes to assert claims for those gamblers' injuries.

Unsurprisingly, a Massachusetts District Court evaluating the exact same statutes as *Fair Gaming* and *Curran* came to the opposite conclusion when ***spouses*** brought the claims instead of strangers. *In re Daily Fantasy Sports Litig.*, 2019 WL 6337762 at *12–13 (D. Mass. Nov. 27, 2019) (finding equitable estoppel inapplicable to spouses' recovery claims and rejecting argument that spouses benefitted from the casinos' terms because plaintiffs "would have shared with their family member player plaintiff the financial rewards of the player's winnings"). Spouses suffer their own injuries measured by reference to, but separate from, the gamblers' wins or losses, and therefore do not stand in the gamblers' shoes when they litigate their own independent claims.[3] *See id.*

Finally, Defendants rely on *Zynga, Inc. v. Mills*, which also involved stranger plaintiffs and the standing in the shoes theory, but which was decided based on inapplicable Alabama state law. 2025 WL 1198744, at *1–2 (Ala. Apr. 25, 2025) (holding plaintiffs did not gamble or know any gamblers; thus, these uninjured strangers "are standing in the legal shoes of players" when they seek to recover the gamblers' injuries). Moreover, just like in Massachusetts, the Alabama Supreme Court came to the opposite conclusion when evaluating a ***spouse's*** claim under the same statute. *Davis v. Orme*, 36 Ala. 540, 543 (1860) (holding "[t]he wife's right of action [in the loss recovery statute] is derived ***directly through and from the statute***, and ***not from her husband***" (emphasis added)). Indeed, because "[t]he statute was manifestly intended to suppress the evil practice of betting, and to prevent an improvident husband from gambling away his estate," the husband's claims must be treated as entirely distinct from his wife's. *Id.* The Court explained that no doctrine

---

[3] Many of the class states provide different recovery to family members than to gamblers, such as treble damages or costs. *See, e.g.*, 720 Ill. Comp. Stat. 5/28-8 (treble damages); Ky. Rev. Stat. Ann. § 372.040 (treble damages); Mass. Gen. Laws Ann. ch. 137, § 1 (treble damages); Miss. Code Ann. § 87-1-5 (costs); N.J. Stat. Ann. § 2A:40-6 (costs); Ohio Rev. Code Ann. § 3763.04 (costs); S.C. Code Ann. § 32-1-10 (treble damages and costs).

could interfere with a spouse's recovery—so much so that even "[t]he husband's fraud ***cannot estop the wife*** [from suing to collect], nor defeat her statutory rights." *Id.* (emphasis added).[4]

All these cases confirm that theories like Defendants' "standing in the shoes" argument are only applied to ***uninjured strangers*** that lack their own standing, ***not injured spouses*** like John Brown, Trena Ostlund, Zachary Parker, and Eve Fields who alleged their own injuries and are the intended beneficiaries of the statutes (unlike strangers). *See also Humphrey v. Viacom, Inc.,* 2007 WL 1797648, at *2–3 (D.N.J. June 20, 2007) (explaining the "common origin and purpose" of the statutes is to "prevent gamblers and their families from becoming destitute due to gambling losses . . . by providing a method for the gambler's spouse, parent or child to recover the lost money from the winner"); *Johnson v. McGregor*, 55 Ill. App. 530, 533 (Ill. App. Ct. 1894) (holding wife injured by husband's gambling "gained a personal right in the demand [for his losses] which was in the plainest sense her separate property. She could not be deprived of it by the action of her husband or any one else, and when she recovers it she may hold and enjoy it free from his interference"), *aff'd,* 157 Ill. 350 (1895).

**C. <u>Jumio, Yodlee, Trustly, and Mifsud Cannot Compel Arbitration.</u>**

Defendants Jumio, Yodlee, Trustly, and Mifsud wrongly claim they can enforce VGW's arbitration agreement against nonsignatory Plaintiffs as nonsignatory intended third party beneficiaries. Mot. at 12–14. These defendants further claim that whether their claims fall within the scope of the arbitration clause is an issue delegated to the arbitrator. *Id.* They bear the burden to prove both points. *See* 9 U.S.C. § 4; *Knutson*, 771 F.3d at 565. They fail to do so.

<u>First</u>, the delegation clause is inapplicable. Delegation clauses cannot be enforced against nonsignatories, even nonsignatories who are purportedly bound to a contract through equitable estoppel. *See Houghton v. Leshner*, 2024 WL 5154071, at *4–5 (N.D. Cal. Nov. 25, 2024), *aff'd sub nom. Houghton v. Polychain Alchemy, LLC*, 2025 WL 2965204 (9th Cir. Oct. 21, 2025). Moreover, "the question of arbitrability with nonsignatories rests with [the court], not an arbitrator." *Id.* at *5; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (holding courts,

[4] In any event, no plaintiff resides in Alabama and Plaintiffs do not seek to bring any claims under Alabama law.

not arbitrators, decide whether agreements exist between parties); *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719 (9th Cir. 2020) ("[It] would subvert the Supreme Court's FAA jurisprudence . . . to treat the question of who is a party to a contract as a matter of scope" because the court would always "err on the side of accepting" entities as parties who could invoke arbitration "even if the other party would never have consented to such an arrangement."). It is undisputed Plaintiffs did not agree to the Terms. Compl ¶ 22. Thus, the delegation clause is irrelevant.

Defendants also fail to identify a single case in which a nonsignatory defendant like Jumio, Yodlee, Trustly, or Mifsud has ever been allowed to enforce an arbitration agreement against a nonsignatory plaintiff. Each of Defendants' cases concerns a ***signatory*** plaintiff. *See Ferreira v. Uber Techs., Inc.*, 2023 WL 7284161, at *1 (N.D. Cal. Nov. 3, 2023) (nonsignatory defendant enforcing against signatory plaintiff); *Khachatryan v. Mercedes-Benz USA, LLC*, 2025 WL 2955995, at *1 (N.D. Cal. Sept. 8, 2025) (same); *Mohammad v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *2 (E.D. Cal. Nov. 29, 2018) (same); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165, at *6 (N.D. Cal. Apr. 11, 2011) (same). All these cases are inapplicable to and distinguishable from the instant situation where neither these defendants nor Plaintiffs signed the arbitration agreement.

Second, Defendants do not even attempt to establish that they qualify as third party beneficiaries. As Defendants' own *Ferreira* case makes clear, the Ninth Circuit requires purported third party beneficiaries to prove that: (i) they benefit from the contract, (ii) their benefit was "a motivating purpose of" both contracting parties, and (iii) allowing the third party to enforce the contract is consistent with the parties' expectations at the time of contracting. 2023 WL 7284161, at *4 (quoting *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022)). Defendants argue none of these factors. In any event, the nonsignatory defendants are not defined as service "suppliers" in the Terms, which repeatedly distinguish "partners" from "suppliers." *See* Cavallaro Decl. Exs. E-I §§ 6.8, 8.4, 22.1–3. Reasonable parties could therefore disagree whether both parties intended Jumio, Yodlee, Trustly, and Mifsud to fall under the term "suppliers" rather than "partners," to which the arbitration agreement does not apply. *See id.* § 24. Defendants have failed

to carry their burden to prove they are third party beneficiaries who can compel nonsignatory Plaintiffs to arbitration under any circumstances.

**D. <u>Defendants Fail to Provide Required Evidence of Arbitrability.</u>**

As explained above, the Court should dispose of Defendants' motion because Plaintiffs' claims are not arbitrable under any of Defendants' asserted theories. But even if that were not the case, Defendants can only bind Plaintiffs to the Terms if Defendants first prove Plaintiffs' spouses signed the Terms. *Zamudio v. Aerotek, Inc.*, 698 F. Supp. 3d 1202, 1208–09 (E.D. Cal. 2023). That evidentiary showing requires more than a custodian simply ***stating*** that Plaintiffs' spouses were the ones that signed the Terms; the proof must "foreclose the possibility that other individuals could have [created the account] and/or signed the agreement." *Id.* at 1209. To satisfy their burden, Defendants must provide VGW's signature "audit trail" for each gambler, as well as "username[s]," "IP addresses," "security measure[s] for protecting passwords, or for transmitting and storing information," including "[whether] her password had to be reset to first access the account, or if her account information is private." *Id.* at 1208–09. Otherwise Defendants fail to prove that only Plaintiffs' spouses could have signed the Terms. *Id.* (denying motion to compel arbitration). Thus, even if the Court were to find that equitable estoppel may apply here (it does not), Defendants must present evidence foreclosing the possibility that anyone besides a Plaintiff's spouse could have accepted the Terms. *See id.; see also Hansen*, 1 F.4th at 671. Because Defendants failed to submit the requisite evidence in support of their motion, it should be denied, or at the very least, an evidentiary hearing should be granted so that Plaintiffs can properly contest any proof Defendants may provide on reply.

**E. <u>No Stay Is Warranted</u>**

It is undisputed that a stay is only proper "when a dispute is subject to arbitration." Mot. at 14:16. Because Plaintiffs' claims are not subject to arbitration, no stay is warranted.

## VI. <u>DEFENDANTS' ALTERNATIVE MOTION TO DISMISS ALSO FAILS.</u>

In the alternative to its motion to compel arbitration, Defendants incorrectly argue that this Court lacks subject matter jurisdiction.

In 2015, the Ninth Circuit specifically considered and resolved an intra-Circuit split on whether disputes about the representative adequacy of named plaintiffs presents a standing or class certification issue. *Melendres v. Arpaio*, 784 F.3d 1254, 1263 (9th Cir. 2015). The Ninth Circuit expressly rejected the "standing approach" to evaluating claims and "adopt[ed] the class certification approach," under which "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." *Id.* at 1262. *Melendres* further held these issues should be resolved at the class certification stage whenever the named plaintiffs' personal claims do not "implicate a significantly different set of concerns" than the concerns of missing plaintiffs. *Id.* at 1263. Here, all the residents' and nonresidents' claims implicate the same concerns, and Defendants do not argue otherwise. Compl. ¶¶ 15, 18, 242–43; *see also Humphrey*, 2007 WL 1797648, at *2–3 (stating "there are no substantial differences" between the state anti-gambling statutes, which "share a common origin and purpose").

Courts in the Northern District have repeatedly applied *Melendres* to the question of whether named plaintiffs can bring claims "under the laws of states where they do not reside and where they did not transact with defendants, but where other putative class members do or did"—and found it to be a class certification question, ***not*** a standing question. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 955–56 (N.D. Cal. 2018) (noting *Melendres* appears to create a "per se rule" and finding that, even if it did not, such issues should be resolved at class certification); *Ottesen v. Hi-Tech Pharms., Inc.*, 2024 WL 5205539, at *9 (N.D. Cal. Dec. 23, 2024) ("[W]hile this case involves named plaintiffs bringing legal claims pursuant to state laws for states they did not reside in, the distinction [between this scenario and that in *Melendres*] is not material for purposes of taking the class certification approach."); *Hrapoff v. Hisamitsu Am., Inc.*, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022) (same); *Pecanha v. The Hain Celestial Grp., Inc.*, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018) (same).

While the Court has discretion on whether to evaluate class certification issues at the pleadings stage, the Court has previously declined to do so. *See Partida v. Schenker Inc.*, 2024 WL

1354432, at *6 (N.D. Cal. Mar. 29, 2024) (Martínez-Olguín, J.) ("Whether Partida will ultimately be allowed to present claims on behalf of others who do not have identical interests is not a question of standing and will depend on 'an assessment of typicality and adequacy of representation' that the Court does not determine at this stage." (citing *Melendres*, 784 F.3d at 1262)); *Weinberg v. Twitter, Inc.*, 2024 WL 3908112, at *5 (N.D. Cal. Aug. 21, 2024) (Martínez-Olguín, J.) ("[T]he argument that a class representative lacks standing to proceed on behalf of the class 'confuse[s] the standing analysis in a class action for the class certification analysis.'" (citing *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019))); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *3 (N.D. Cal. Nov. 9, 2018) (deferring determination because named plaintiffs brought statutory claims that did not "vary much among the [resident and non-resident] states"). The Court should follow that approach here, especially because Defendants explicitly argue Rule 23 does not apply and do not identify any meaningful differences between any of the state statutes. Mot. at 4:15–5:26, 14:23–15:24; *see In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2023 WL 3440399, at *11 (N.D. Cal. May 12, 2023) (deferring determination where named plaintiffs represented less than half the Class States because "[d]efendants have made no suggestion that the laws of the respective Class States differ so significantly as to prevent Class Plaintiffs from being either typical of the class members in those states or inadequate to represent them").

Because Defendants' Rule 12(b)(1) challenge rests on issues to be resolved at class certification, their alternative motion to dismiss should also be denied.

## VII. CONCLUSION

Defendants do not carry their burden to prove an agreement to arbitrate with these Plaintiffs, equitable grounds to bind them, or any basis to dismiss for lack of standing. Accordingly, Plaintiffs respectfully request the Court deny Defendants' motion.

Dated: January 12, 2026

SUSMAN GODFREY L.L.P.

By: /s/ *Julian Schneider*

Bryan Caforio
Krysta Kauble Pachman
Erik L. Wilson
Julian Schneider
Sarah Almond Pike
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
bcaforio@susmangodfrey.com
kpachman@susmangodfrey.com
ewilson@susmangodfrey.com
jschneider@susmangodfrey.com
spike@susmangodfrey.com

*Attorneys for Plaintiffs John Brown, Eve Fields, Trena Ostlund and Zachary Parker*

## CERTIFICATE OF SERVICE

I certify that on January 12, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's ECF system.

Dated: January 12, 2026

*/s/Julian Schneider*
Julian Schneider