BRYAN CAFORIO (CA 261265)
bcaforio@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
ERIK L. WILSON (339111)
ewilson@susmangodfrey.com
JULIAN SCHNEIDER (347246)
jschneider@susmangodfrey.com
SARAH ALMOND PIKE (337690)
spike@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiffs John Brown, Trena Ostlund, Zachary Parker, and Eve Fields*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JOHN BROWN, TRENA OSTLUND, CLEVELAND GRANDERSON, MATTHEW BLATT, ZACHARY PARKER, KARIM LAURY, and EVE FIELDS on behalf of themselves and all others similarly situated;

Plaintiffs,

vs.

VGW HOLDINGS US INC., VGW US, INC., VGW LUCKYLAND INC., LAURENCE ESCALANTE, VGW HOLDINGS LIMITED, VGW MALTA HOLDING LIMITED, VGW MALTA LIMITED, VGW GAMES LIMITED, VGW GP LIMITED, JUMIO CORPORATION, YODLEE, INC., TRUSTLY, INC., and BRIAN CHRISTOPHER MISFUD;

Defendants.

Case No. 3:25-cv-07071-AMO

CLASS ACTION

Hon. Araceli Martínez-Olguín
Courtroom 10, 19th Floor

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION (ECF No. 38)**

Date: May 7, 2026
Time: 2:00 p.m.
Crtrm: 10

Complaint Filed August 20, 2025

Jury Trial Demanded

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED ..... 3

III. STATEMENT OF FACTS ..... 3

IV. LEGAL STANDARD ..... 5

V. ARGUMENT ..... 5

A. All VGW Defendants Are Subject to General Jurisdiction in California. ..... 5

1. The Court Has General Jurisdiction Over VGW US. ..... 6

2. The Court Has General Jurisdiction Over All Remaining VGW Defendants Because They Are Alter Egos of VGW US. ..... 9

B. The Court Has Specific Jurisdiction Over All VGW Defendants ..... 15

1. VGW Defendants Purposefully Avail Themselves of California Law. ..... 15

2. VGW Purposefully Directs Actions Into And From California. ..... 20

3. The Claims Arise Out of and Relate to Defendants' California Contacts. ..... 21

4. VGW Fails to Make a Compelling Case that Jurisdiction Is Unreasonable. ..... 24

C. If the Court Finds Insufficient Facts, It Should Order Jurisdictional Discovery. ..... 25

VI. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M Co. v. Christian Invs. LLC*,
2012 WL 6561732 (E.D. Va. July 12, 2012) .......... 19

*ADO Fin., AG v. McDonnell Douglas Corp.*,
931 F. Supp. 711 (C.D. Cal. 1996) .......... 11

*Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*,
128 F. Supp. 2d 340 (E.D. Va. 2001) .......... 19

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) .......... 17, 18, 21

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .......... 22

*Baton v. Ledger SAS*,
2021 WL 5178827 (N.D. Cal. Nov. 8, 2021) .......... 7

*Baton v. Ledger SAS*,
2021 WL 5226315 (N.D. Cal. Nov. 9, 2021) .......... 7

*Baton v. Ledger SAS*,
2022 WL 17352192 (9th Cir. Dec. 1, 2022) .......... 7, 25

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) .......... 7, 8, 18, 23

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 21, 22, 24

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*,
582 U.S. 255 (2017) .......... 22

*Chan v. UBS AG*,
2019 WL 6825747 (C.D. Cal. Aug. 5, 2019) .......... *passim*

*Choi v. Gen. Motors LLC*,
2021 WL 4133735 (C.D. Cal. Sept. 9, 2021) .......... 24

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
169 F. Supp. 2d 1119 (N.D. Cal. 2000) .......... 23

*Clarke v. TNSG Health Co.*,
2024 WL 2794103 (C.D. Cal. May 15, 2024), *aff'd*, *Clarke II,* 2025 WL 2860597 .......... 10, 11, 13

*Clarke v. TNSG Health Co.*,
2025 WL 2860597 (9th Cir. Oct. 9, 2025) .......... *passim*

*Clinton v. Montes*,
2012 WL 12886490 (C.D. Cal. July 16, 2012) .......... 20, 21

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) .......... 10, 14

*Delphix Corp. v. Embarcadero Techs., Inc.*,
749 F. App'x 502 (9th Cir. 2018) .......... 6

*DFSB Kollective Co. v. Bourne*,
897 F. Supp. 2d 871 (N.D. Cal. 2012) .......... 20, 21

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) .......... 10

*Dynetech Corp. v. Leonard Fitness, Inc.*,
523 F. Supp. 2d (M.D. Fla. 2007) .......... 20

*Erwin v. Fin. Life Servs., LLC*,
2010 WL 11596535 (C.D. Cal. Mar. 30, 2010) .......... 9, 10

*Est. of Miller v. Cnty. of Sutter*,
2020 WL 6392565 (E.D. Cal. Oct. 30, 2020) .......... 11, 13

*Fair Gaming Advocs. Georgia Inc. v. VGW Holdings Ltd.*,
2024 WL 5113237 (N.D. Ga. Dec. 13, 2024) .......... 12, 17, 20

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 5, 22

*Fregosa v. Mashable, Inc.*,
2025 WL 1083214 (N.D. Cal. Apr. 10, 2025) .......... 20, 21

*Gianelli v. Schoenfeld*,
2021 WL 4690724 (E.D. Cal. Oct. 7, 2021) .......... 6

*Gordian Grp., LLC v. Syringa Expl., Inc.*,
168 F. Supp. 3d 575 (S.D.N.Y. 2016) .......... 25

*Guifu Li v. A Perfect Day Franchise, Inc*,
281 F.R.D. 373 (N.D. Cal. 2012) .......... 13, 14

*Harris v. Lloyds TSB Bank, PLC*,
281 F. App'x 489 (6th Cir. 2008) ........ 16

*HealthMarkets, Inc. v. Superior Ct.*,
171 Cal. App. 4th 1160 (2009) ........ 10

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ........ 5, 7, 8

*Hickory Travel Sys., Inc. v. TUI AG*,
213 F.R.D. 547 (N.D. Cal. 2003) ........ 9

*Impossible Foods Inc. v. Impossible X LLC*,
80 F.4th 1079 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 2561 (2024) ........ 15, 25

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) ........ 9, 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
277 F. Supp. 3d at 1189 ........ 10, 13

*In re Schwarzkopf*,
626 F.3d 1032 (9th Cir. 2010) ........ 11

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) ........ 18, 19

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
2014 WL 10384631 (C.D. Cal. Feb. 18, 2014) ........ 14

*Instabook Corp. v. Instantpublisher.com*,
469 F. Supp. 2d 1120 (M.D. Fla. 2006) ........ 20, 21

*Kater v. Churchill Downs Inc.*,
886 F.3d 784 (9th Cir. 2018) ........ 1

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ........ 10

*Kennedy v. VGW Holdings Ltd.*,
2025 WL 1932750 (N.D. Ga. July 14, 2025) ........ 12, 20, 25

*Kormylo v. Forever Resorts, LLC*,
2015 WL 106379 (S.D. Cal. Jan. 6, 2015) ........ 6, 7

*Kramer Motors, Inc. v. Brit. Leyland, Ltd.*,
628 F.2d 1175 (9th Cir. 1980) ........ 10

*Larsen v. PTT, LLC*,
737 F. Supp. 3d 1076 (W.D. Wash. 2024) ........................................ 1

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........................................ 5, 11

*Moonbug, Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*,
2025 WL 445801 (N.D. Cal. Feb. 10, 2025) ........................................ 12, 14

*Nordstrom, Inc. v. Republic of Frends, Inc.*,
2017 WL 3705788 (S.D. Cal. Aug. 28, 2017) ........................................ 12

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) ........................................ 13

*NuCal Foods, Inc. v. Quality Egg LLC*,
887 F. Supp. 2d 977 (E.D. Cal. 2012) ........................................ 8, 9

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
198 F.R.D. 670 (S.D. Cal. 2001) ........................................ 25

*Pac. Bell Tel. Co. v. 88 Connection Corp.*,
2016 WL 3257656 (N.D. Cal. June 14, 2016) ........................................ 14

*Pitt v. Metro. Tower Life Ins. Co.*,
2020 WL 1557429 (N.D. Cal. Apr. 1, 2020) ........................................ 9

*RAE Sys., Inc. v. TSA Sys., Ltd.*,
2005 WL 1513124 (N.D. Cal. June 24, 2005) ........................................ 9, 10, 11

*Ranza v. Nike, Inc.*,
793 F.3d 1071-2 (9th Cir. 2015) ........................................ 8

*Shah v. Hilton Worldwide Holdings Inc.*,
2025 WL 1683577 (N.D. Cal. June 11, 2025) ........................................ 20

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........................................ 24

*Tidenberg v. Bidz.com, Inc.*,
2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ........................................ 24

*Updateme Inc. v. Axel Springer SE*,
2018 WL 1184797 (N.D. Cal. Mar. 7, 2018) ........................................ 14

*Wilson v. Playtika, Ltd.*,
349 F. Supp. 3d 1028 (W.D. Wash. 2018) ........................................ 19, 21, 22

*Wilson v. PTT, LLC*,
351 F. Supp. 3d 1325 (W.D. Wash. 2018) .................................................. 19, 21, 22

*Winery v. Graham*,
2007 WL 963252 (N.D. Cal. Mar. 29, 2007) .................................................. 10

*Woods v. Morris Mohawk Gaming Grp.*,
2025 WL 3459479 (E.D. Ky. Dec. 2, 2025) .................................................. 19

**Statutes**

18 U.S.C. § 1955 .................................................. 22, 23

31 U.S.C. § 5363 .................................................. 22

**Rules**

Fed. R. Civ. P. 8(a) .................................................. 8

Fed. R. Civ. P. 12(b) .................................................. 9

Fed. R. Civ. P. 12(b)(2) .................................................. 5

Fed. R. Civ. P. 12(b)(6) .................................................. 23

## I. INTRODUCTION

Plaintiffs seek to hold the VGW Defendants[1] accountable for operating illegal online casinos in, from, and through the State of California. The Ninth Circuit has already held that nearly identical online casinos violate similar state anti-gambling statutes and consumer protection statutes. *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 787–9 (9th Cir. 2018) (affirming social casinos' "free" virtual chips are "thing[s] of value" being gambled in "an illegal gambling scheme" under Washington's anti-gambling statutes and reversing dismissal of gambling and consumer protection claims); *Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076, 1085–9 (W.D. Wash. 2024) (granting summary judgment for plaintiffs suing online social casino for same claims). To avoid the VGW Casinos suffering the same fate as the nearly identical illegal casinos that preceded them, the VGW Defendants argue that California courts cannot exercise ***any*** jurisdiction over them, even though they indisputably:

- Headquarter(ed) their U.S. operations in California, including by having their key executives, officers, and most U.S. employees work in California;
- Actively recruit new employees into California;
- Enter into critical gambling operations contracts with multiple California companies;
- Offer online casinos to California residents;
- Register to do business in California;
- Force every gambler (including the Plaintiffs' spouses) to digitally travel to California to verify their identities and geolocation before using their services;
- Install geolocation tracking software onto gamblers' computers from California;
- Create and distribute misleading advertising in and from California;
- Connect to each gambler's financial accounts through California;
- Store gamblers' financial information on California servers; and
- Require that the money used or received for every illegal bet runs through California.

[1] The "VGW Defendants," or "VGW," includes VGW Holdings US Inc., VGW US, Inc., VGW Luckyland Inc., Laurence Escalante, VGW Holdings Limited, VGW Malta Holding Limited, VGW Malta Limited, VGW Games Limited, and VGW GP Limited. *See* Compl. at 5:3–6.

Based on the VGW Defendants' extensive contacts with California, not only may California courts exercise jurisdiction over them, but California is the most logical and appropriate forum to adjudicate this action because it is the hub for all VGW Defendants' U.S. operations.

VGW's claimed recent move of their U.S.-headquartered entities ("VGW US") from California to Colorado does ***not***, as VGW asserts, deprive this Court of general jurisdiction over them because, under Ninth Circuit law, general jurisdiction persists for at least three years after a company moves its headquarters out of state. And regardless of where VGW US ***says*** their headquarters are located, their headquarters ***are*** where their key executives and officers are located—which was, and still is, California.

This Court has general jurisdiction over the remaining VGW Defendants because they are alter egos of VGW US. *See, e.g.*, *Clarke v. TNSG Health Co.*, 2025 WL 2860597, at *2 (9th Cir. Oct. 9, 2025) ("*Clarke II*") ("The district court properly found all remaining Appellants to be alter egos of TNSG . . . . Thus, as TNSG is subject to [personal] jurisdiction in California, personal jurisdiction extends to all alter ego Appellants."). Each of the VGW subsidiaries is wholly owned by a common parent company, VGW Holdings Limited ("VGW Parent"), which is, in turn, 100% owned by Mr. Laurence Escalante. All subsidiaries work together under Mr. Escalante's and VGW Parent's control to operate the illegal online casinos, target gamblers in U.S. states where gambling is illegal, and funnel the unlawful gambling proceeds from these states back up to VGW Parent and Mr. Escalante. Allowing defendants to operate this global scheme in, from, and through California—but then escape California jurisdiction through the fiction of corporate separateness—creates the exact inequities alter ego is designed to prevent.

Even if Defendants were not subject to general jurisdiction in California (they are), this Court has specific jurisdiction over all VGW Defendants with respect to Plaintiffs' claims. VGW US and the VGW Casinos operate in, from, and through California under the direction of their common global parent and Mr. Escalante. VGW knowingly recruits and employs California employees and tasks them with running VGW's U.S. operations in and from California. And VGW also controls, requests, supports, directs, and/or participates in every action that the non-VGW

Defendants take in California on VGW's behalf—which facilitate all gamblers' access to the VGW Casinos and all the illegal financial transactions that occur within them.

Because California courts may exercise jurisdiction over the VGW Defendants, the Court should deny VGW's motion and permit Plaintiffs to advance their well-pleaded claims.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court may exercise general personal jurisdiction over any or all of the VGW Defendants where (a) VGW US either is headquartered in California or was headquartered in California within the last three years, and (b) all other VGW Defendants are alter egos.

2. Whether the Court has specific jurisdiction over any or all of the VGW Defendants where (a) the VGW Defendants (including their alter egos) purposefully avail themselves of California's laws and markets and/or purposefully direct their operations into, through, and from California; (b) Plaintiffs' claims arise out of and relate to VGW Defendants' (or their alter egos') California contacts; (c) and VGW Defendants fail to provide a compelling reason why it would be unreasonable for the Court to exercise its jurisdiction.

## III. STATEMENT OF FACTS

VGW owns and operates three illegal online casinos (the "VGW Casinos"), which function similarly to traditional brick-and-mortar casinos. Compl. ¶¶ 111–22, 128. Before allowing a gambler to place a bet, VGW first evaluates potential gamblers to determine whether they are permitted to gamble in the casinos, including by verifying all would-be gamblers' identification, age, and geolocation. *Id.* ¶¶ 93, 215–21. VGW chooses to route this process, in every instance and for every gambler, through California using their California-based partner Jumio. *Id.* On VGW's behalf, and at VGW's direction, Jumio installs tracking software onto all gamblers' computers to ensure VGW always knows from which state the gamblers place their bets. *Id.* Gamblers that attempt to bet in prohibited states will have their bets voided, their casino access revoked, and face potential lawsuits by VGW. Cavallaro Decl., *e.g.*, Exs. E § 3.2–3.3.

Once Jumio, in California, verifies that a gambler is on VGW's approved gambler list, VGW requires every gambler to connect his or her financial accounts to VGW and convert cash into coins to place bets. *Id.* ¶¶ 96, 99, 222–39. VGW requires all gamblers to run this financial

process in and through California using their California-based partners Yodlee or Trustly. *Id.* From California, Yodlee and/or Trustly facilitate VGW's verification of their gamblers' financial accounts and the actual transfer of all funds into the VGW Casinos for conversion into "sweepstakes coins" or "SC" (which are redeemable dollar-for-dollar in cash) and "gold coins" or "GC" (which are not redeemable). *Id.* ¶¶ 96, 99, 113–17, 222–39. All gamblers' financial information is then stored in, and retrieved from, California servers. *Id.* ¶¶ 64 & n.6, 95. If a gambler attempts to withdraw any winnings from the casinos, VGW instructs Trustly or Yodlee, in California, to transfer funds from VGW back to the gambler's accounts. *Id.* ¶¶ 96, 99, 222–39. In short: (i) every would-be gambler's age, identity, geolocation, and financial status is checked, approved, and/or rejected by VGW in, from, or through California; (ii) VGW requires every gambler to reconfirm his or her age, identity, and geolocation in, from, or through California each time he or she gambles; and (iii) VGW forces every monetary transaction—including every single dollar wagered or redeemed by every gambler—to occur in, from, or through California.

Defendants Brian Christopher Misfud and Ryan Seacrest create, star in, and promote VGW's intentionally misleading marketing materials and campaigns, which emanate from California into the Class States. *Id.* ¶¶ 69–72, 103, 159–214. VGW uses these California-created-and-distributed materials to trick consumers into believing that VGW does not offer illegal gambling and that gamblers' odds of winning at the casinos are higher than they actually are. *Id.*

To create a legal fiction that this scheme does not violate certain states' prohibitions on gambling (including California's and the Class States'), the VGW Casinos use both SC and GC, which are virtual casino chips. *Id.* ¶¶ 113–17. These coins are bundled for purchase by gamblers. For example, a gambler who purchases a 300-coin package pays $300 for that package and receives $300 in cash-redeemable SC, plus non-redeemable GC. *Id.* VGW claims it gives the gambler the SC for "free." *Id.* Based on this obvious fiction, VGW claims SC have no "value"—even though VGW itself values SC at $1 and exchanges SC dollar-for-dollar with cash. *Id.* ¶¶ 113–24. This scheme is and always was gambling. *Id.* ¶¶ 135–40. VGW admitted this undeniable fact years ago when it was trying to sell itself to another company. *Id.*

Plaintiffs now bring this action on behalf of themselves and the putative class to recover their statutory damages. *Id.* ¶¶ 240–415. Plaintiffs' claims are based on the UCL and specific state anti-gambling statutes that create independent causes of action to recover an amount of damages partially set by their family members' gambling losses. *Id.* ¶¶ 256–415. Plaintiffs never gambled on, used, or accessed the VGW Casinos, but they suffered a direct injury when their family members gambled at the VGW Casinos and lost money in which Plaintiffs held a separate financial interest. *Id.* ¶¶ 20–22, 24–26, 32–34, 44–46.

## IV. LEGAL STANDARD

Where a defendant files a motion to dismiss based on lack of personal jurisdiction under Rule 12(b)(2) supported by written declarations, "the plaintiff need only make a prima facie showing of jurisdictional facts" to survive the motion. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[U]ncontroverted allegations in the complaint must be taken as true," and all "factual disputes [are resolved] in the plaintiff's favor." *Id.*

## V. ARGUMENT

The Court has general jurisdiction over all VGW Defendants because VGW US is or was headquartered in California, and the remaining VGW Defendants are alter egos of VGW US. The Court also has specific jurisdiction over all VGW Defendants because each defendant directly, or through their alter egos or agents, routes every gambler and every dollar flowing into and out of the casinos through California. For either reason, the motion to dismiss must be denied.

### A. All VGW Defendants Are Subject to General Jurisdiction in California.

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). That includes a defendant's "place of domicile," "place of incorporation," and "principal place of business" (also referred to as its "headquarters" or "nerve center") *Id.*; *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, 96 (2010). General jurisdiction "extends to 'any and all claims' brought against a defendant," which "need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." *Ford*, 592 U.S. at 358.

Here, VGW US is "at home" in California because it is headquartered in California—or, at least was so recently headquartered in California that it is still subject to general jurisdiction here under Ninth Circuit law. Further, all the foreign VGW entities and Mr. Escalante are alter egos of VGW US, making them equally subject to California's jurisdiction pursuant to Ninth Circuit law.

**1. The Court Has General Jurisdiction Over VGW US.**

VGW does not dispute that, until recently, VGW US (comprised of VGW Holdings US Inc., VGW US, Inc., and VGW Luckyland Inc.[2]) was headquartered in California. *Compare* Compl. ¶¶ 74, 76, 83, 90 *with* Mot. at 6. Instead, VGW attempts to defeat general jurisdiction by claiming that, in October 2023, VGW US moved their headquarters from California to Colorado. Mot. at 6. VGW argues that "general jurisdiction is to be determined no earlier than the time of filing of the complaint"; thus, because VGW US had purportedly moved their headquarters before the Complaint was filed, California cannot have general jurisdiction over it. *Id.* VGW's argument fails.

As California district courts repeatedly hold, and as the Ninth Circuit has confirmed, "the analysis does not end [with identifying the complaint's filing date]. Once the relevant date is determined, ***most courts look back from that date a 'reasonable time,' typically between three and seven years,*** to assess whether there are continuous and systematic contacts sufficient for general personal jurisdiction." *Kormylo v. Forever Resorts, LLC*, 2015 WL 106379, at *10 (S.D. Cal. Jan. 6, 2015) (cleaned up and emphasis added) (citing 4 Wright et al., Federal Practice & Procedure § 1067.5 & n. 11.75 (3d ed. 2002 & Supp. 2014); *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018) ("[O]ne cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place." (quoting *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)) (applying three-to-seven-year lookback period to find general jurisdiction over corporation that had moved its headquarters out of California prior to suit). "[T]he fair warning given [a defendant] by his contacts with California does not expire simply because of his lack of later contacts with the state." *Gianelli v. Schoenfeld*, 2021 WL 4690724, at *5 (E.D. Cal. Oct. 7, 2021). Importantly, "a contrary conclusion [] might encourage potential defendants to move

[2] Compl. ¶ 47 ("VGW internally refers to these three entities as 'VGW US'").

out of state in an effort to defeat general personal jurisdiction." *Kormylo*, 2015 WL 106379, at *11; *see also Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 892–93 (N.D. Cal. 2024) ("*Baton II*") (finding general jurisdiction over company that had moved its headquarters out of California two years and eleven months prior to becoming a defendant; "Because [defendant] was headquartered in California less than three years before this suit commenced, it is subject to general jurisdiction for purposes of this suit." (citation omitted)).

VGW's sole authority, Mot. at 6, for the proposition that a purported headquarters move instantly destroys general jurisdiction—*Baton v. Ledger SAS*, 2021 WL 5178827, at *4 (N.D. Cal. Nov. 8, 2021) ("*Baton I*")—is bad law. That opinion was amended and superseded prior to appeal, then was remanded by the Ninth Circuit on appeal. *See Baton v. Ledger SAS*, 2021 WL 5226315, at *1 (N.D. Cal. Nov. 9, 2021) (amending and superseding) *and Baton v. Ledger SAS*, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022) (reversing and remanding in part). After the remand, the *Baton* Court rejected the very argument VGW cites it for and found general jurisdiction over an out-of-state company because its move out of California had taken place just under three years before that defendant was sued. *Baton II*, 740 F. Supp. 3d at 892–93 (collecting authorities). Here, Plaintiffs filed their Complaint on August 20, 2025 (with a relation back date of April 28, 2025, Compl. ¶ 74), well within the minimum three-year lookback period. ECF No. 1. As every California district court and the Ninth Circuit has found, VGW US is subject to general jurisdiction on this basis alone.

Additionally, contrary to VGW's arguments, California remains VGW US's "nerve center" and, thus, is still VGW US's headquarters. *See Hertz*, 559 U.S. at 92–93, 96. VGW asserts only that VGW US began leasing office space in Colorado in October 2023 and that human resources personnel are located in Colorado. Mot. at 6; Cavallaro Decl. ¶¶ 14-15, 23. But VGW ***admits*** that key officers and executives remained in California after the Colorado office opened and ***never moved*** to Colorado. Cavallaro Decl. ¶¶ 19–22. Because "the acts of corporate officers and directors in their official capacities are the acts of the corporation[,]" and VGW US's key officers and executives remain to this day in California, VGW US's headquarters remains in California "for

jurisdictional purposes."[3] *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 996–97 (E.D. Cal. 2012). Any public representations or filings by VGW US to the contrary are irrelevant. *See* Mot. at 6–7[4]; *Hertz*, 559 U.S. at 92–93 (even if "the bulk of a company's business activities visible to the public take place in [Colorado]," if "its top officers direct those activities . . . in [California], the 'principal place of business is [California]").

VGW makes two other arguments against general jurisdiction, neither of which hold water. First, VGW argues that VGW US can only be "at home" in Australia where their ultimate corporate parent (VGW Parent) resides. *See* Mot. at 7 (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)). Wrong. *Ranza* held no such thing and expressly recognized that "due process principles [allow] haling the parent into the subsidiary's forum" and that "the traditional application of the alter ego test" is to "impute a subsidiary's local contacts to a foreign parent." 793 F.3d at 1071–2. Second, VGW claims that Plaintiffs did not make any allegations regarding VGW's "nationwide or worldwide" activities. Mot. at 7 (citing *Groontok v. Labrie Env't Grp.*, No. 2023 WL 5420299 (C.D. Cal. July 20, 2023) and *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). Wrong again. Plaintiffs expressly pleaded that VGW has historically captured 50–90% of the "global social and sweepstakes casino market share," derives billions annually from that global market, receives the "vast majority" of those billions from the U.S.—with the "majority" of those U.S. revenues coming from states where gambling is illegal, such as California and the Class States. Compl. ¶¶ 90, 109-10. No more is required under Rule 8(a) and Defendants cite no case that holds otherwise.

VGW US is unquestionably subject to general jurisdiction in California. Indeed, all the

---

[3] Moreover, VGW did not dispute, and therefore concedes, that: (i) "most of VGW's U.S.-based employees are located or based" in California, Compl. ¶ 78; (ii) VGW was actively recruiting casino game designers to work in California as of February 2025, *id.* ¶ 80; and (iii) VGW's U.S. operations generate a majority of VGW's global revenues, *id.* ¶¶ 90, 109-10. *See* Cavallaro Decl. ¶¶ 13-24; Mot. at 6 & n.2. VGW US and these California employees also "support VGW's operations in the United States" in, from, and through California. Cavallaro Decl. ¶¶ 13, 19-22.

[4] Particularly irrelevant are actions VGW took ***after*** the Complaint was filed that VGW tries to pass off as evidence it was not headquartered in California ***before*** the Complaint was filed. *See Baton II*, 740 F. Supp. 3d at 892–93. This includes actions like VGW US changing its principal place of business listed with the California Secretary of State (and other business directories) after the Complaint was filed. *See* Cavallaro Decl., Exs. A, D.

VGW Casinos (and thus the foreign entities that operate, control, and support them) are "at home" in California because California is the "nerve center" for all of VGW's gambling operations.

**2. The Court Has General Jurisdiction Over All Remaining VGW Defendants Because They Are Alter Egos of VGW US.**

In the Ninth Circuit, personal jurisdiction over an entity extends to its foreign alter egos. *See, e.g.*, *Clarke II*, 2025 WL 2860597, at *2. Thus, to the extent any Defendants are not "at home" in California, the Court has personal jurisdiction over them as alter egos of VGW US.

As a threshold matter, VGW Defendants waived their challenge to Plaintiffs' alter ego allegations by failing to specifically dispute alter ego in the Motion. "[M]ere allegations of an alter ego relationship are sufficient to sustain personal jurisdiction at the Rule 12(b) stage." *Erwin v. Fin. Life Servs., LLC*, 2010 WL 11596535, at *7 (C.D. Cal. Mar. 30, 2010); *RAE Sys., Inc. v. TSA Sys., Ltd.*, 2005 WL 1513124, at *4 (N.D. Cal. June 24, 2005) (same). Here, Plaintiffs expressly pleaded, based on VGW's own public documents, that the VGW entities and Mr. Escalante are "alter egos" of each other, with common ownership, unified interests, common shared goals, shared revenues, shared employees and officers, and merged or commingled functions, funds, and budgets. Compl. ¶¶ 57, 47–61, 76–91. Not only do VGW Defendants fail to deny those allegations, they do not even reference "alter ego"—and thus wholly fail to challenge general jurisdiction over Mr. Escalante or any of the VGW entities based upon it. *See* Mot. at 7, 15–18.

Instead, Defendants argue against straw men—quoting language from cases addressing "collective enterprise" and "single enterprise" theories that Plaintiffs do not assert and which Defendants' own cases make clear ***are not Plaintiffs' pleaded alter ego theory***. *See* Mot. at 7, 15–17; *e.g.*, *Pitt v. Metro. Tower Life Ins. Co.*, 2020 WL 1557429, at *4 (N.D. Cal. Apr. 1, 2020) (cited at Mot. 15; noting that "collective enterprise" and "single enterprise" are ***not*** "the well established alter ego [or] agency theories"; finding lack of personal jurisdiction because plaintiff alleged these theories ***instead of*** alter ego). Accordingly, VGW's arguments, including those about the cases they cite, are inapposite.[5] This fails to properly challenge alter ego and concedes it was properly pleaded

[5] *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2–*3 (N.D. Cal. Sept. 29, 2021) (not cited for alter ego theory); *NuCal*, 887 F. Supp. 2d at 990 (same); *Hickory Travel*

against all VGW Defendants. *See, e.g.*, *Erwin*, 2010 WL 11596535, at *7 (denying motion to dismiss for lack of personal jurisdiction where defendant's motion papers did "not acknowledge the 'alter ego issue'"). But even if the Court evaluates Plaintiffs' alter ego allegations, they are sufficiently pleaded against all VGW Defendants at this stage.

"Federal courts 'apply the law of the forum state in determining whether a corporation is an alter ego' of a party." *Clarke v. TNSG Health Co.*, 2024 WL 2794103, at *6 (C.D. Cal. May 15, 2024) ("*Clarke I*"), *aff'd*, *Clarke II,* 2025 WL 2860597. "Under California law, an alter ego relationship exists where '(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.'" *Id.* (citation omitted). The alter ego doctrine may apply between parents, subsidiaries, sister companies, affiliated companies, and individuals. *Id.* at *6–8 (finding global network of parents, subsidiaries, sister entities to all be alter egos under California law); *RAE*, 2005 WL 1513124, at *3 (noting alter ego applies to an "individual defendant"); *Clarke II*, 2025 WL 2860597, at *2 n.2 ("[P]ersonal jurisdiction can be exercised over all Appellants for an additional, independent reason: The district court has general jurisdiction over Naturalist, Inc. and Wild Forest, Inc., both of which are alter egos of TNSG that are incorporated in California.").

"While '[t]here is no litmus test' governing the existence of an alter ego relationship," alter ego is found when common ownership plus at least one of the following factors is found:

- The "concentration of ownership in a single individual or family";
- An "overlap in the directors and officers of the entities";
- The "utilization . . . as a mere shell, instrumentality, or conduit for a single venture";
- The "use of the same employees and/or attorneys";

---

*Sys., Inc. v. TUI AG*, 213 F.R.D. 547, 554 (N.D. Cal. 2003) (same); *In re Packaged Seafood*, 277 F. Supp. 3d at 1189 (same); *Kramer Motors, Inc. v. Brit. Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (same); *Unocal*, 248 F.3d at 928–30 (same); *Winery v. Graham*, 2007 WL 963252, at *5–7 (N.D. Cal. Mar. 29, 2007) (same); *HealthMarkets, Inc. v. Superior Ct.*, 171 Cal. App. 4th 1160, 1169 (2009) (same); *Doe v. Unocal Corp.*, 248 F.3d 915, 925-26 (9th Cir. 2001) (same); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) (same); *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) (same; finding personal jurisdiction).

- The "commingling of assets or failure to segregate funds"; or
- The "confusion of the records of the separate entities."

*Id.* at *6. "No one characteristic governs, but . . . [if] it would be inequitable to treat the [two] as separate entities, courts should avoid the inequity" by finding alter ego. *Id.* A plaintiff need only plausibly allege two factors for alter ego to be found. *RAE*, 2005 WL 1513124, at *4 (citing case in which only two factors were found); *Est. of Miller v. Cnty. of Sutter*, 2020 WL 6392565, at *6 (E.D. Cal. Oct. 30, 2020) (same). Moreover, "the alter ego test for attribution of contacts, i.e., personal jurisdiction, is ***less stringent*** than that for liability." *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 717 (C.D. Cal. 1996) (emphasis added).

First, VGW Defendants share common and concentrated ownership. An entity or individual need own only have some legal property interest in a company to create an alter ego relationship. *In re Schwarzkopf*, 626 F.3d 1032, 1038-40 (9th Cir. 2010) (finding alter ego based on equitable stock ownership; noting shared property interests are sufficient). Here, VGW US and VGW's foreign entities are all commonly owned by VGW Parent and Mr. Escalante, the 100% owner of VGW Parent.[6] Compl. ¶¶ 47–61. Thus, VGW US shares common ownership with each of VGW's foreign entities. *Id.* This supports an alter ego finding over VGW US and each foreign entity ultimately owned by Mr. Escalante.

Second, VGW Defendants share directors, officers, employees, and attorneys. The sharing of directors, officers, employees, ***or*** attorneys among entities also favors finding alter ego status. *Clarke I*, 2024 WL 2794103, at *6; *Clarke II,* 2025 WL 2860597, at *2. Here, in addition to sharing common ownership with the foreign VGW entities, VGW US also shares directors, officers, employees, ***and/or*** attorneys with each foreign entity and/or Mr. Escalante.

All VGW Defendants use the same attorneys, which they have done in multiple cases in the

---

[6] Defendants ambiguously claim—without any supporting evidence—that, instead of owning 100% of VGW Parent and all their subsidiaries, "Mr. Escalante, together with affiliated entities, controls ***more*** than 85% of VGW Group." Cavallaro Decl. ¶ 10 (emphasis added). This does not contradict Plaintiffs' allegation of 100% ownership because "more than 85%" ***includes*** 100%. At best, this is a factual dispute that must be resolved in Plaintiffs' favor at this stage. *See Mavrix*, 647 F.3d at 1223. Accordingly, Mr. Escalante must be treated as the 100% owner of all VGW entities.

past, including *Fair Gaming Advocs. Georgia Inc. v. VGW Holdings Ltd.*, 2024 WL 5113237, at *1 (N.D. Ga. Dec. 13, 2024) and *Kennedy v. VGW Holdings Ltd.*, 2025 WL 1932750, at *4 (N.D. Ga. July 14, 2025). This strongly favors an alter ego finding between VGW US, the foreign entities, and Mr. Escalante. *See, e.g.*, *Moonbug*, *Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, 2025 WL 445801, at *4 (N.D. Cal. Feb. 10, 2025) (finding alter ego in part because entities "employ the same attorney") (citing *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 249–50) (1999).

VGW US and the foreign entities share a Board with VGW Parent. VGW Parent has a Board, but their subsidiaries do not. *See* Compl. ¶ 51 (Mr. Escalante is the only identified director) *and* Cavallaro Decl., Exs. A–C (VGW US Secretary of State filings stating VGW US has ***no Board of Directors***). Thus, all Board functions appear to be performed by VGW Parent, which controls operations for all the VGW subsidiaries. This further confirms that VGW Parent's Board of Directors serves as the Board of Directors for itself, VGW US, and all the foreign subsidiaries.

Mssrs. Escalante and Brinkman are common officers shared between VGW Parent, VGW US, and the foreign subsidiaries. Mr. Escalante is the CEO of VGW Parent and the CEO/CFO of all three VGW US entities. Compl. ¶¶ 51, 87. He thus serves as the VGW entities' global Director ***and*** CEO, as well as the CEO and CFO of VGW's US operations. This supports alter ego as well. *See Nordstrom, Inc. v. Republic of Frends, Inc.*, 2017 WL 3705788, at *4 (S.D. Cal. Aug. 28, 2017) (finding alter ego where companies "share the same CEO" and distribute the same type of products). Mr. Brinkman is (or at relevant times was) the President, General Manager, and Secretary of all three VGW US entities and an Executive Product Advisor for VGW Parent. Comp;. ¶ 76; *see* Cavallaro Decl. ¶ 20, Exs. A–C.

VGW concedes that it employs numerous VGW US employees in California that support Mr. Brinkman. *Supra* § V.A.2. These employees (and Mr. Brinkman) support US operations for ***all*** the VGW Casinos. Compl. ¶¶ 78-82, Cavallaro Decl. ¶¶ 13, 19.

<u>Third</u>, VGW Defendants operate as a single venture, use common names, commingle funds and budgets, fail to treat themselves as independent entities, and route their illegally-gained profits

from the casinos to VGW Parent and Mr. Escalante. *Clarke I*, 2024 WL 2794103, at *6. Alter ego is also satisfied when entities pursue a common illicit goal, commingle funds, fail to treat entities as independent, and/or pass significant portions of the proceeds back up to a common parent entity and/or individual. *See Est. of Miller*, 2020 WL 6392565, at *5–6 (alter ego found when entities used "the same or very similar names," "a parent control[led] its subsidiaries," and "the companies [used] commingled funds"; further finding that "explaining in detail how one company dictated every facet of the other's business . . . is not necessary"); *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 404 (N.D. Cal. 2012) (entities founded "for a complementary purpose" can be alter egos); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232 (Fed. Cir. 2010) (intent by "commonly owned sister companies" to serve "whole US market," combined with "distribution" through "California entity" with "profits" from distribution "flow[ing] to [parent]" establishes jurisdiction); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1188–89 (S.D. Cal. 2017) (cited by Mot. at 16) (holding transfer of illicit profits to a controlling parent is "sufficient to defeat a motion to dismiss" and denying motion to dismiss under more rigorous ***non***-jurisdictional alter ego standard).

VGW US and the foreign VGW entities all use VGW-based names and pursue the common goal of running the illegal VGW Casinos. Compl. ¶¶ 47-61. As VGW's documents confirm, and the Motion does not deny, ***VGW Parent*** "operates a social (or online) casino ***through its*** wholly owned gaming platform[s]" and "deriv[es] the majority of [its] revenues from ***its*** wholly owned gaming platform[s]." Compl. ¶ 57 (emphasis added).[7] Thus, VGW Parent admits it operates the VGW Casinos as a single global enterprise, in disregard for their separate corporate forms, and takes the resulting casino revenues for itself and Mr. Escalante as 100% owners. Plaintiffs also

[7] VGW also admits that "VGW and its subsidiaries, including the subsidiaries named as defendants," "collectively" "develop[]" and "public[ize]" the VGW Casinos and the casino games they offer. Cavallaro Decl., *e.g.*, Ex. E §§ 1, 2.1 (defining roles of various VGW entities in operating and supporting VGW Casinos); *id.* §§ 2.2, 3–9 (VGW controls and reserves discretion over all financial transactions, the value of SC/GC, and the purchase and redemption of SC/GC); *id.* §§ 3–9, 11, 21 (VGW controls and reserves discretion over access to and gambling at the VGW Casinos, including by verifying age, identity, and location using third parties under VGW's control); *id.* § 18 (VGW obtaining each gamblers' preauthorization to send targeted marketings).

specifically pleaded, and Defendants did not deny, that the VGW entities commingle their funds and budgets in order to create "almost unheard-of large" combined advertising budgets to use for all the VGW Casinos jointly. *Id.* ¶¶ 86, 142. Even VGW's executives appear to be confused about which VGW entities they work for.[8] These facts further support an alter ego relationship between VGW Parent, VGW US, and all the VGW subsidiaries.

Finally, it would be inequitable to treat VGW Defendants as separate entities here. For the second alter ego prong, Plaintiffs need only plausibly allege that an inequitable result would occur if alter ego liability were ***not*** imposed. *See Pac. Bell Tel. Co. v. 88 Connection Corp.*, 2016 WL 3257656, at *7 (N.D. Cal. June 14, 2016); *Clarke II,* 2025 WL 2860597, at *2. Inequitable results include allowing companies or individuals who directed, controlled, or participated in a common scheme to "perpetrate a fraud, circumvent a statute, or accomplish some other wrong or inequitable purpose," *Guifu*, 281 F.R.D. at 402, or cause the "frustration of a meritorious claim" or "avoidance of personal liability." *Updateme Inc. v. Axel Springer SE*, 2018 WL 1184797, at *10 (N.D. Cal. Mar. 7, 2018).

Here, Plaintiffs have alleged a common global scheme invented, orchestrated, and perpetrated by Mr. Escalante, VGW Parent, VGW US, and the foreign VGW entities. Compl. ¶¶ 107–239. Denying alter ego status in this situation would allow these perpetrators to escape liability, frustrate Plaintiffs' meritorious claims, prevent Plaintiffs from recovering damages held by these alter egos, and circumvent statutes passed to prevent this type of scheme. This result would be inequitable. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 2014 WL 10384631, at *8 (C.D. Cal. Feb. 18, 2014) (finding inequitable situation when victims cannot fully collect due to corporate money-moving); *Pac. Bell*, 2016 WL 3257656, at *6 (finding the inability to fully collect from entities with a unity of interest to be inequitable); *Moonbug*, 2025 WL 445801, at *5 (similar); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 n.10 (9th Cir. 1989) (officers can be held personally liable when they are a "guiding spirit" or "central figure" in the misconduct). Accordingly, alter

---

[8] *Compare* Compl. ¶ 76 (pre-Complaint Brinkman LinkedIn profile stating he was currently the "General Manager of VGW US" and employed by "VGW") *with* Cavallaro Decl. ¶ 20 (claiming Mr. Brinkman only "served as General Manager of VGW Luckyland."

ego should be found between Mr. Escalante, VGW Parent, VGW US, and the foreign VGW entities. Because VGW US is the alter ego of each of the foreign entities and Mr. Escalante, each Defendant is subject to VGW US's California general jurisdiction.

**B. The Court Has Specific Jurisdiction Over All VGW Defendants.**

The VGW Defendants are also subject to specific jurisdiction in California because Defendants elect to run their illegal gambling operation—from which the Complaint arises and relates—in, from, and through this State. The Ninth Circuit has "articulated three requirements for establishing specific jurisdiction over a non-resident defendant: (1) the defendant must either purposefully direct his activities toward the forum *or* purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086–87 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 2561 (2024). Plaintiff only "bears the burden on the first two prongs," then the burden flips to defendant, which "must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*at 1087 (citation omitted). Here, each element supports exercising specific jurisdiction over each VGW Defendant.

**1. VGW Defendants Purposefully Avail Themselves of California Law.**

The VGW Casinos (as directed by VGW Parent and Mr. Escalante) utilize Jumio, Yodlee, Trustly, Misfud, and Seacrest to run their illegal gambling enterprise in, from, and through California. For example, VGW does not let a single gambler enter or place a bet at any of the VGW Casinos until VGW first diverts that potential gambler to Jumio in California to verify the gambler's age, identification, and geolocation. Compl. ¶¶ 215–21. Once Jumio verifies that information for VGW in California, and installs tracking software to facilitate future verifications, VGW allows or prevents the potential gambler from creating a VGW account. *See id.* Then VGW requires each gambler to connect his or her financial accounts to VGW's bank in order to convert cash to SC and (if lucky enough) from SC back to cash. *Id.* ¶¶ 222–39. Each time a gambler returns to the casino, VGW first diverts the gambler back to California through Jumio, Trustly, and/or Yodlee to re-

verify the gambler's age, identification, and geolocation, and to facilitate the conversion of cash into coins the gambler can wager. *Id.* ¶¶ 215-39. VGW also uses VGW US and its California employees to support these and other operations across the U.S. *Id.* at 76-82; Cavallaro Decl. ¶¶ 13, 19, 22.

VGW attempts to escape this Court's jurisdiction by characterizing Jumio, Yodlee, Trustly, and even VGW US's own employees, as independent third parties over which no VGW entity exercises any control. Mot. at 12–20. But as VGW admits, only the "unilateral" actions of third parties are not attributable to VGW as jurisdictional contacts. *See* Mot. at 12; *id.* at 20 (citing *Chan v. UBS AG*, 2019 WL 6825747, at *11 (C.D. Cal. Aug. 5, 2019) and *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008)). VGW's own cases demonstrate that any actions VGW controls, requests, knowingly supports, or participates in, are "bilateral" actions that ***create*** jurisdiction. *See Chan*, 2019 WL 6825747, at *11 (requesting that a third party perform financial transfers on a company's behalf makes those transfers a "bilateral" contact "created by" the company that supports jurisdiction); *Harris*, 281 F. App'x at 495 (initiating a contact creates jurisdiction). Here, VGW controls, requests, knowingly supports, initiates, and/or participates in California actions undertaken by VGW US and Jumio, Yodlee, Trustly, Misfud, and Seacrest:

**Jumio** acts as the VGW Casinos' California-based "bouncer": it collects and verifies each gambler's age, identity, and geolocation at account creation and each time the gambler tries to access the VGW Casinos or location-restricted games within them. Compl. ¶¶ 62–3, 92–3, 215–21. To collect and verify this information to VGW, Jumio installs tracking software onto each gamblers' computer from California, which it monitors and tracks for VGW from Jumio's California headquarters, and then transmits to VGW from those headquarters. *Id.* As explained above, it was VGW's decision to partner with a California corporation to implement these age, identity, and geolocation requirements, and VGW controls and sets those requirements. *See also* Compl. ¶ 221. In this way, VGW compels each potential gambler to virtually travel to California and through California servers to verify his or her identity, age, and geolocation every time he or she requests access to the VGW Casinos or a location-restricted game in those casinos. VGW

decides which players are allowed to gamble, where those players must be located, and which games they can access. *Id.* ¶ 63, 93, 215–21. And VGW uses gamblers' location data to target them with VGW Casino-branded prepaid Mastercard debit cards, other gaming promotions, and physical gifts in order to lure them back to the casinos. *Id.* ¶¶ 148–9, 155–56. Gamblers also connect to Jumio's services through VGW's website. Jumio is not an independent free agent making unilateral decisions. Instead, VGW pays Jumio in California to provide necessary information to VGW so ***VGW*** can make unilateral decisions about distributing its product into and through California. That is purposeful availment by VGW. *See, e.g.*, *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 977 (9th Cir. 2021) (holding Australian company purposefully availed itself of Idaho because it chose to "contract with 'a third-party logistics company' . . . 'to fulfill all of [its] shipments outside of Australia"); *cf. Chan*, 2019 WL 6825747, at *11 (requesting services is bilateral action).

**Yodlee and Trustly** act as the VGW Casinos' California-based "cashiers." Compl. ¶¶ 222–39. They collect and verify each gamblers' financial information, connect the gamblers to VGW's financial accounts, transfer money from the gamblers' accounts' to VGW's accounts for coin packages, and transfer cash to gamblers that VGW has determined should be paid (and which VGW specifically requests Yodlee or Trustly pay on VGW's behalf). *Id.* In other words, from California, they facilitate the VGW Casinos' cash-to-coin and coin-to-cash conversions. *Id.* at ¶¶ 222, 225, 232. Yodlee also stores gamblers' financial information on its California servers to be accessed by VGW at its convenience. *Id.* ¶¶ 64, 95. Like Jumio, Yodlee and Trustly engage in transactions controlled, requested, knowingly supported, initiated, and participated in by VGW, which subjects VGW to specific jurisdiction. *Ayla*, 11 F.4th at 977; *cf.*, *Chan*, 2019 WL 6825747, at *11.

**Brian Christopher Misfud** and Ryan Seacrest are California residents who market the casinos, at VGW's direction, in and from California. *Id.* ¶¶ 69–72, 102–3, 159–214. VGW uses both these California residents to create, star in, and distribute VGW's intentionally misleading marketing scheme, which is designed to trick consumers into gambling more. *Id.* Chumba Casino and Luckyland Slots direct, control, cross-promote, and create VGW-hosted websites and gambling events for, and pay partnership commissions to, Misfud and/or Seacrest in, from, and through

California. *Id.* Misfud also hosts and participates in gambling events from California, which are marketed across the U.S. into the Class States to lure gamblers to the casinos. That, too, is purposeful availment by VGW. *Ayla*, 11 F.4th at 977; *cf.*, *Chan*, 2019 WL 6825747, at *11.

**VGW US** supports and operates VGW's global scheme for all the VGW Casinos in, from, and through California, all under VGW US's California business registrations. *See* Compl. ¶¶ 47–9, 76–85; Cavallaro Decl. ¶¶ 2, 13, 19, Exs. A–C (despite all VGW Casinos operating in California, only VGW US is registered to do business in California). That constitutes purposeful availment by VGW US and its alter egos and agents. *Id.*; *Ayla*, 11 F.4th at 977; *cf. Chan*, 2019 WL 6825747, at *11.

That VGW US purports to have transitioned its California employees (which support all of VGW's U.S. operations for all the VGW Casinos) to working from home did not somehow transform them into independent third parties. VGW's support, facilitation, and active recruiting of remote work in California makes it attributable to VGW. *Baton II*, 740 F. Supp. 3d at 887–88 ("[P]ersonal jurisdiction [exists] when an employer supports or facilitates its employees' remote work in a forum state" and only "sporadic or un-endorsed remote work is insufficient."). None of VGW's California employees work for VGW in California by accident; they are there because VGW is or was headquartered in California and/or because VGW recruited them to work in California. Compl. ¶¶ 76–80. In any event, because VGW's employees in California "play[ed] a significant role in the management and supervision of [issues] which lie[] at the heart of this case," "when [all facts are] viewed in Plaintiffs' favor," the Court should exercise personal jurisdiction over the VGW Defendants. *Baton II*, 740 F. Supp. 3d at 889–90; *see* Compl. ¶¶ 76–83.

Additionally, agency theory provides a separate basis to attribute the actions of VGW US, Jumio, Yodlee, Trustly, Misfud, and Seacrest to the foreign VGW entities and Mr. Escalante for specific jurisdiction purposes. Compl. ¶ 57 (alleging agency and alter ego); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 701 (C.D. Cal. 2022) (agency remains a viable theory for imputing specific jurisdiction contacts; finding agency relationship). Under the agency doctrine, an individual or entity that "substantially controls" the actions of another "are in

an agency relationship," and "the allegations as to the forum-related activities of [the agent] can be imputed to [the principal] for the purpose of assessing personal jurisdiction." *Id.* At the pleading stage, a plaintiff need plead only "that the relationship between those entities goes beyond the 'normal oversight of a parent over a subsidiary.'" *Id.* (quoting *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021)). The same facts that supported alter ego status above also establish control—rather than mere normal oversight—flowing from: (i) Mr. Escalante to VGW Parent; (ii) VGW Parent to VGW US and the other VGW subsidiaries; (iii) VGW US to each VGW Casino; and (iv) each VGW Casino and VGW US to Jumio, Yodlee, Trustly, Misfud, and Seacrest, which operate at their direction. *Supra* § V.A.2. Each agent's actions are attributable to each principal, creating an unbroken chain of principals and agents leading all the way back to Mr. Escalante. VGW only cites *In re Cal. Gasoline* as applying the agency theory—but that case is inapposite because, as VGW notes, it merely found that "[b]eing concerned with profitability and insisting that a subsidiary follow corporate-wide policies does not make a parent an agent." 2021 WL 4461199, at *3. Plaintiffs allege far more than that, and Defendants cite no case that found agency lacking under similar circumstances.

Courts also routinely find purposeful availment in each state in which an online casino offers gambling to forum residents, as VGW does in California. *See* Compl. ¶ 90; *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1035–36 (W.D. Wash. 2018) (finding offering social casino gaming in a state constitutes purposeful availment by all the casino's domestic entities and foreign parent companies, even without alter ego or agency); *Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1334 (W.D. Wash. 2018) ("*PTT*") (same); *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F. Supp. 2d 340, 350 (E.D. Va. 2001) (finding online casino registered by an entity in the Dominican Republic with no offices, employees, or physical location in the United States subject to personal jurisdiction in Virginia); *3M Co. v. Christian Invs. LLC*, 2012 WL 6561732, at *6 (E.D. Va. July 12, 2012) (similar); *Woods v. Morris Mohawk Gaming Grp.*, 2025 WL 3459479, at *4–7 (E.D. Ky. Dec. 2, 2025) (similar). VGW's own actions; the actions it controls through Jumio, Yodlee, Trustly, Misfud, and Seacrest; and the actions of VGW US—both directly

and through alter ego and agency relationships—demonstrate that the VGW Defendants collectively, individually, and purposefully availed themselves of California's laws and markets.

Rather than directly confront the overwhelming evidence of its California contacts, VGW asks this Court to follow two inapposite Georgia cases: *Fair Gaming* and *Kennedy* (currently on appeal). *See* Mot. at 12–13. In neither case did plaintiffs allege VGW: (i) was ever headquartered in Georgia; (ii) employed officers, executives, and a substantial number of non-executive employees in Georgia; (iii) actively recruited employees to work in Georgia; (iv) supported and ran VGW's U.S. operations from Georgia; (v) forced each gambler to virtually travel to Georgia each time they needed to access and gamble at the VGW Casinos; (vi) had alter egos or agents in Georgia, or (vii) partnered with a single Georgia company to run its illegal gambling enterprise. *Kennedy v*, 2025 WL 1932750, at *4; *Fair Gaming*, 2024 WL 5113237, at *1.

VGW's remaining purposeful availment cases bear no resemblance to this one.[9] Mot. at 12–20. The court in *Shah v. Hilton Worldwide Holdings Inc.*, found only that a foreign parent with no California headquarters, alter egos, or agents—and no knowledge, control, or involvement in the company's California hotel business—did not purposefully avail itself of California. 2025 WL 1683577, at *1 (N.D. Cal. June 11, 2025). Similarly, the court in *Dynetech Corp. v. Leonard Fitness, Inc.*, held that owning a passive website with links to unaffiliated third parties that sometimes sold products in Florida does not purposefully avail the owner of Florida's laws and markets. 523 F. Supp. 2d at 1344, 1346 (M.D. Fla. 2007). In sharp contrast, VGW runs its illegal online casino operation in, through, and from California, *supra* § III, thereby purposefully availing itself of California's laws and markets.

**2. <u>VGW Purposefully Directs Actions Into And From California.</u>**

Applying the purposeful direction test further demonstrates that this Court has jurisdiction over the VGW Defendants for these claims. As the Ninth Circuit and courts within it have

[9] As discussed *infra* at V.B.2, VGW's other cases, Mot. at 12–14, only decided purposeful direction. *See Fregosa v. Mashable, Inc.*, 2025 WL 1083214, at *2 n.1 (N.D. Cal. Apr. 10, 2025); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012); *Clinton v. Montes*, 2012 WL 12886490, at *1 (C.D. Cal. July 16, 2012); *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1124 (M.D. Fla. 2006); *Chan*, 2019 WL 6825747, at *10.

repeatedly found, any actions directed into a state when the defendant has at least "constructive knowledge" that its actions are "exploiting that [forum] for commercial gain" is sufficient to satisfy purposeful direction. *See, e.g.*, *Ayla*, 11 F.4th at 981–82 ("[Defendant] has done more than merely place its products into the stream of commerce"; it "offers its products directly for sale to the United States on its website," has "control over the ultimate distribution of its products," and "determines how and whether its orders are fulfilled."); *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756, 759 (9th Cir. 2025) (express aiming includes "install[ing ] software onto their devices in California, and continu[ing] to track their activities" while having constructive knowledge of their location) (cleaned up); *PTT*, 351 F. Supp. 3d at 1335 (making online casinos available to forum residents satisfies purposeful direction); *Playtika*, 349 F. Supp. 3d at 1035–6 (same).

Here, each VGW entity purposefully directs its actions into California with at least constructive knowledge that VGW US, and its employees and officers, are located in California. *Supra* § V.B.1; Compl. ¶ 90. VGW's purposeful direction cases are inapposite. *See* Mot. at 13–14. In *Clinton*, the court simply held that "[m]aintenance of passive website alone cannot satisfy express aiming." 2012 WL 12886490, at *2. In *Instabook*, the court found only that two random sales in a state do not suffice to constitute purposeful direction. 469 F. Supp. 2d at 1126. In *DFSB*, the court determined that an Australian company's ads for Australian and Florida businesses were not "related to or directed at California." 897 F. Supp. 2d at 882. And the court in *Fregosa* found that a website that never "exhibited an intent to cultivate an audience in" California did not purposefully direct actions into California. 2025 WL 1083214, at *2. Finally, in *Chan*, the Court declined jurisdiction because the forum contacts were irrelevant or acted unilaterally. 2019 WL 6825747, at *8–9. None bears any resemblance to this case, in which each VGW entity (directly and/or through its alter egos and agents) knowingly and purposefully directed its actions into California and intentionally cultivated operations, offices, employees, partners, customers, alter egos, and agents in and through California, with actual or constructive knowledge that these actions were occurring within California. *Supra* §§ V.A.2–B.2.

**3. <u>The Claims Arise Out of and Relate to Defendants' California Contacts.</u>**

Plaintiffs satisfy the second prong of the personal jurisdiction test because their claims

"arise out of ***or*** relate to the defendant's contacts with the forum." *Ford*, 592 U.S. at 352 (emphasis added). A plaintiff's "claim arises out of [defendant's] forum-related activities" if the activities were a "but for" cause of plaintiffs' harms. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). "[N]o gambling could occur" at any of the VGW Casinos (or at least "VGW would have significantly lower revenues") without Jumio's, Yodlee's, Trustly's, Misfud's, Seacrest's, or VGW US's California operations. Compl. ¶¶ 17, 47-9. This gambling injured Plaintiffs. Plaintiffs therefore satisfy this "but for" test. *See Playtika*, 349 F. Supp. 3d at 1036 (gambling claims and UCL equivalents "arise out of" online casinos' operations); *PTT*, 351 F. Supp. 3d at 1337 (same).

A plaintiff's claim "relates to" defendant's contacts when there is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*, 582 U.S. 255, 262 (2017). The "relate to" prong is more permissive and "support[s] jurisdiction without a causal showing." *Ford*, 592 U.S. at 362. Additionally, Plaintiffs need allege only "the kind of injury that would 'tend to be caused' by [defendant]'s contacts." *Briskin*, 135 F.4th at 760 (citation omitted). Plaintiffs' UCL and state gambling loss claims are certainly the type of claims that would tend to be caused by VGW's (and its alter egos' and agents') actions in California.[10]

Plaintiffs' UCL claims are predicated on violations of 18 U.S.C. § 1955 and 31 U.S.C. § 5363. Compl. ¶¶ 264–79. Under section 1955, a defendant "conduct[s]" an illegal gambling scheme in California "by performing any necessary function in the gambling operation" in California. Compl. ¶¶ 266–68 (quoting *U.S. v. Miller*, 22 F.3d 1075, 1077 (11th Cir. 1994)). VGW violates Section 5363 whenever it accepts money via electronic transfers. Compl. ¶¶ 274–9. VGW's California conduct is integral to Plaintiffs' UCL claims. The Complaint alleges that Jumio, Yodlee, Trustly, Misfud, Seacrest, and VGW US perform necessary functions for every gambling transaction in and from California, and that VGW directs all electronic transfers to fund the gambling to California. Compl. ¶¶ 47–9, 62–72, 76–104, 141–239; *see supra* § V.A.2–B.

---

[10] For a defendant-by-defendant chart identifying each Defendant's California contacts and the claims they relate to, *see* Wilson Decl., Ex. A.

VGW directs its California partner Jumio to collect, verify, and track each gamblers' age, identity, and geolocation from California. Compl. ¶¶ 62–3, 92–3, 215–21; *see supra* § V.A.2–B. VGW further directs its California partners Yodlee and Trustly to collect and verify gamblers' financial information, connect VGW to gamblers' financial accounts, and electronically transfer money to and from VGW in California. *Id.* ¶¶ 64, 95, 222–39; *see supra* § V.A.2–B. VGW works with famous Californians Misfud and Seacrest to create, promote, and distribute VGW's intentionally misleading marketing materials from California—as well as participate in VGW gambling tournaments and promotions bearing their names. *Id.* VGW US coordinates U.S. operations for all the VGW Casinos from California using California-based employees and executives, using VGW US's California business registrations, and at the direction and control of VGW Parent and Mr. Escalante. *Id.* ¶¶ 47–9, 76–91; Cavallaro Decl. ¶¶ 2, 13, 19, Exs. A–C. Plaintiffs therefore allege that VGW "conducts" gambling operations in California and violates both UCL predicates in California. *See, e.g.*, *Baton II*, 740 F. Supp. 3d at 890 ("Mr. [Brinkman] was a 'senior employee' who 'ma[de] significant decisions in California' and was a 'key decision maker for the alleged [gambling] at issue in the case. Thus, Plaintiffs' claims 'relate to' defendant's forum related conduct"). Plaintiffs' UCL claims arise out of or relate to VGW's California conduct.

Plaintiffs' claims for violations of the anti-gambling statutes in the Class States also arise out of or relate to Defendants' California conduct because the same violations that trigger liability under section 1955 violate the state statutes. Compl. ¶¶ 268–70 (violations of state anti-gambling laws involving five or more persons and lasting 30 days violate section 1955). VGW's California contacts were also "but for" causes of Plaintiffs' injuries and at least "tend" to cause such injuries.

Although VGW did not notice or file a Rule 12(b)(6) motion, it nevertheless asserts that Plaintiffs failed to state a non-extraterritorial UCL claim. Mot. at 10-11. Not so. Plaintiffs' UCL and state gambling claims are predicated on conduct that emanated from California into the Class States. Compl. ¶ 262. VGW's own cases establish that this ***intra***-territorial conduct states a proper UCL claim. *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (UCL claim is extraterritorial only if "none of the alleged misconduct . . . occurred in California.");

*Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) (UCL available to "out-of-state parties when they are harmed by wrongful conduct occurring in California").

VGW also argues, without authority, that these claims cannot survive without a California-resident plaintiff. Mot. at 10. Wrong. VGW's relevant conduct in California establishes jurisdiction. *See, e.g.*, *Choi v. Gen. Motors LLC*, 2021 WL 4133735, at *1 (C.D. Cal. Sept. 9, 2021). In *Choi*, the court found that California had personal jurisdiction over GM for a vehicle crash, despite the fact that "the vehicle crash occurred in Colorado, Plaintiffs [we]re all citizens of Colorado, medical care was rendered in Colorado (likely entirely by Colorado residents), the Vehicle was licensed and titled in Colorado, and [] the design and assembly of the Vehicle occurred outside of California." *Id.* The only connection to California was that the car had been sold in California. *Id.* While the *Choi* plaintiffs could ***also*** sue in Colorado, the mere fact that another state "might have been 'the most natural State[s]' for personal jurisdiction . . . does not suggest exclusivity insofar as personal jurisdiction is concerned." *Id.* Thus, while it may be the case that Plaintiffs ***also*** could have sued in the Class States—VGW fails to establish they could ***only*** sue in the Class States.

California is the most natural state for this case because California is: (i) VGW US's headquarters the VGW Casinos' global operations; (ii) the state where most of VGW's US employees work; (iii) the nexus for VGW's and Jumio's, Yodlee's, Trustly's, Misfud's, and Seacrest's actions; (iv) the headquarters or residence for Jumio, Yodlee, Trustly, Misfud, and Seacrest; (v) the only state into which every gambler must digitally travel to access and financially transfer money to/from the casinos; (vi) where gamblers' data is stored; (vii) where gamblers' locations are tracked from, (viii) where misleading advertisements are created and from where they emanate; and (ix) a state in which VGW Casinos operate.

**4. <u>VGW Fails to Make a Compelling Case that Jurisdiction Is Unreasonable.</u>**

Because Plaintiffs state a prima facie case for the first two specific jurisdiction factors, "personal jurisdiction is presumptively reasonable." *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990). "[T]he burden [then] shifts to [defendants] to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Briskin*, 135 F.4th at 751.

VGW falls far short of satisfying the "compelling" standard. Mot. at 21–22.

First, VGW repeats its refrain that "[t]here is simply no basis" for jurisdiction. Mot. at 21. But that argument presupposes Plaintiffs did not state a prima facie case; thus, it cannot be a compelling reason to decline jurisdiction ***despite*** a prima facie showing.

Second, VGW argues that the forum selection clause in its Terms of Service makes jurisdiction unreasonable. Mot. at 21–22. Incorrect. As VGW's own cases establish, forum selection clauses only affect jurisdiction if the clause is enforceable between the parties. *E.g.*, *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581, 583 (S.D.N.Y. 2016) (an unenforceable forum selection clause "provides no ground to support personal jurisdiction"); *Kennedy*, 2025 WL 1932750, at *5 (evaluating impact of forum selection clause on jurisdiction because the clause was part of "the parties' agreement"); *see also Baton,* 2022 WL 17352192, at *2 (reversing dismissal for lack of personal jurisdiction because forum selection clause was unenforceable against California plaintiffs). VGW concedes that the parties to this case never entered ***any*** agreement or agreed to the Terms. *See* Mot. at 21–22; ECF No. 39 at 4–6. Thus, the forum selection clause is irrelevant, even under VGW's own cases.

Just as the Ninth Circuit found in *Impossible Foods*, "there is nothing unreasonable about requiring [VGW] to defend a lawsuit based on its activities in the state that was its 'headquarters' . . . and that continued to be a business [hub]" for related conduct thereafter. 80 F.4th at 1087.

### C. If the Court Finds Insufficient Facts, It Should Order Jurisdictional Discovery.

If the Court finds that additional facts are necessary to exercise its jurisdiction, the Court should grant jurisdictional discovery. *See, e.g.*, *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) (stating it is "counterintuitive" to "require that Plaintiff establish a prima facie case of personal jurisdiction prior to conducting [jurisdictional] discovery").

## VI. CONCLUSION

Plaintiffs provide robust allegations that subject the VGW Defendants to both general and specific jurisdiction in California. Defendants do not carry their burden to prove otherwise. Plaintiffs thus respectfully request the Court deny VGW's motion to dismiss.

Dated: January 12, 2026

SUSMAN GODFREY L.L.P.

By: */s/ Erik L. Wilson*

Bryan Caforio
Krysta Kauble Pachman
Erik L. Wilson
Julian Schneider
Sarah Almond Pike
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
bcaforio@susmangodfrey.com
kpachman@susmangodfrey.com
ewilson@susmangodfrey.com
jschneider@susmangodfrey.com
spike@susmangodfrey.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served electronically on all counsel of record on January 12, 2026.

Dated: January 12, 2026

/s/ *Erik L. Wilson*
Erik L. Wilson